**William O. LEWIS, Plaintiff,**

v.

**Arthur S. FLEMMING, Secretary of Health, Education and Welfare, Defendant.**

**Civ. No. LR 3690.**

United States District Court
E. D. Arkansas, W. D.

Sept. 29, 1959.

Abner McGehee, of Cockrill, Laser & McGehee, Little Rock, Ark., for plaintiff.

Osro Cobb, U. S. Atty., and James W. Gallman, Asst. U. S. Atty., Little Rock, Ark., for defendant.

HENLEY, Chief Judge.

On the cross-motions of the parties for summary judgment.

This is an action brought by the plaintiff under Section 205(g) of the Social Security Act, as amended, 42 U.S.C.A. § 405(g), to secure a judicial review of a final administrative determination that he is not entitled to a "period of disability" or to the "disability benefits" provided by the Act. The plaintiff filed his original claim on August 30, 1957; the claim having been denied in the first instance, the plaintiff requested a hearing before a referee of the Office of Appeals Council of the Social Security Administration. A hearing was held, and the Referee found that the plaintiff was not entitled to a "period of disability" or to the payment of disability benefits; on February 4, 1959, the Office of Appeals Council declined to review the Referee's decision. That determination constituted a "final decision" of the defendant Secretary, and the plaintiff having exhausted his administrative remedies brought this action as authorized by the statute.

It was and is the theory of the plaintiff that he sustained an injury to his lower back or hip in July 1955, and that he has been totally disabled since that time. Thus, under the governing statutory provisions the burden was upon him to establish by a preponderance of credible evidence that he is unable "to engage in any substantial gainful activity by reason of (a) medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration." 42 U.S.C.A. §§ 416(i) and 423(c) (2).

In his opinion, the Referee reviewed the evidence in detail and found "that claimant's impairments, or any combina-

tion thereof, are not of such a degree of severity as to preclude claimant from engaging in some types of activities for which he is qualified by training and experience." It is this ultimate finding that the Court is called upon to review.

■ In an action of this kind, judicial review should go no further than to determine whether the findings made by the administrative fact finder are supported by substantial evidence and whether applicable principles of law have been correctly applied to the facts. Arbitrary or capricious action must be set aside, and, of course, a finding or conclusion based upon an erroneous view of the law cannot be sustained. See Dunn v. Folsom, D.C.Ark., 166 F.Supp. 44; Bostick v. Folsom, D.C.Ark., 157 F.Supp. 108; Fuller v. Folsom, D.C.Ark., 155 F. Supp. 348; Aubrey v. Folsom, D.C.Cal., 151 F.Supp. 836.

■ While the Court recognizes that it was the peculiar function of the Referee to appraise the materials submitted to him, to weigh the plaintiff's testimony, and to draw inferences from the entire record before him, nevertheless, after a careful consideration of the record, the Court is convinced that the Referee's ultimate finding in this case is not supported by substantial evidence, and that the administrative determination adverse to the plaintiff cannot be upheld. The record before the Referee consisted of papers filed by the plaintiff in support of his claim, the testimony of the plaintiff, which was uncontradicted and unimpeached, and a number of medical reports hereinafter abstracted.

At the hearing before the Referee the plaintiff testified that he was born in January, 1897, that he has only a sixth-grade education, and that he has no trade or specialty. All of his active life has been spent in heavy physical labor, such as farming, carpentry and blacksmithing. He has also had some experience in welding and sheet metal work, both of which involve physical labor. He and his wife reside in the country in a house belonging to his son-in-law.

The plaintiff further testified that in July, 1955, while working about his farm his right leg collapsed under him, and that since that time he has been physically unable to do any kind of work; that he is in constant pain; that he has been treated by a number of physicians, and that all they have been able to do for him is to give him some sedation, which affords him some minor and temporary relief from his suffering. Due to his condition, he spends most of his time in a rocking chair with a pillow at his back to ease him. In 1956, he undertook to make a crop, but was unable to finish it, and it was necessary for his neighbors to come to his aid.

The plaintiff testified further that Dr. Edward L. Dunnaway, of Conway, Arkansas, first diagnosed his case as one of a ruptured intervertebral disc, and that it has since been determined that he has arthritic spurs on his spine which press into the flesh causing his pain, and that he has been advised that surgery in his case is not feasible. He also stated that Dr. Nixon, an orthopedic surgeon in Little Rock, Arkansas, has advised him not to lift anything heavier than a plate lunch.

It is plain from the Referee's opinion that he did not disbelieve the plaintiff or consider that he was malingerer. On the contrary, the Referee stated that he was "impressed with the sincere testimony of the claimant and he has no reason to doubt any of the material facts to which the claimant testified". Not only did the Referee not disbelieve the plaintiff's testimony, but that testimony is strongly corroborated by the medical materials in the record as well as by a letter from claimant's wife wherein she graphically describes her husband's sufferings and condition.

The report of Dr. Dunnaway reflects that the plaintiff is suffering from a generalized arthritic condition, involving his legs, back and other parts of the body; that he has prescribed sedation, that plaintiff's condition is not static, and that he has advised the plaintiff not to work. Dr. Dunnaway was also of the opinion

that the plaintiff, due to his arthritis has a 50% disability in his right hip and an equal disability in his lumbar spine.

The report of Dr. B. F. Banister, also of Conway, is that the plaintiff is suffering from arthritis in the lumbo-sacral region of the back, that he suffers severe pain in that region, which pain extends down into his legs, that the plaintiff is unable to work on account of pain, and that his condition is getting worse. The reports of both Dr. Banister and Dr. Dunnaway refer to X-rays taken of the plaintiff in 1955.

Dr. Ewing M. Nixon's report, dated December 30, 1957, contains a diagnosis of bursitis and osteoarthritis of the spine, and it reflects the opinion of Dr. Nixon that the plaintiff is unable to work. He does say that the plaintiff's condition is static.

In June, 1958, plaintiff was examined by Dr. Frank Padberg of Little Rock, a neuro-surgeon. This examination did not bring out any "distinct neurological findings of any note * * * other than a depression of the left Achilles reflex." Dr. Padberg did note a limitation of motion in the plaintiff's low back, but felt that he had from 60 to 75 percent of his usual range of motion. He further stated that the plaintiff has "very extensive hypertrophic osteoarthritic changes which are generalized," and that although no great amount of neurological disability was observed, the plaintiff did have "some rather marked disability which * * * would be more in the realm of an orthopedic disability than a neurological one". Dr. Padberg concluded his report with a recommendation that plaintiff be seen by an orthopedist. His report does not indicate that he was aware that plaintiff had already been seen and his case diagnosed by Dr. Nixon.

The final item in the file is a letter, dated November 12, 1958, from the medical record department of the University of Arkansas Medical Center at Little Rock, which indicates that plaintiff was seen at the Center in April and May of that year, and that X-rays revealed that he was suffering from osteoarthritis.

There is nothing in the report of Dr. Padberg or in the letter from the Medical Center which contradicts the testimony of the plaintiff or the reports of the other physicians who have been mentioned. Such being the case, the Court is persuaded that the only logical and reasonable inference that can be drawn from the record is that the plaintiff on account of his arthritis and the pain incident thereto can no longer work, and that in view of his age, his limited education, and lack of specialized skill, this inability precludes him from engaging in any substantial gainful activity. The Court is also convinced that no reasonable man can question that this disability will last for the rest of the plaintiff's life, or at least for a long and indefinite time in the future.

In connection with his finding that the plaintiff was not entitled to the relief sought by him the Referee made the following statement:

"Although there are, as previously noted, some limitations in the motions of the lower extremities and the lumbosacral spine, it appears that these are not singly or combined of such a degree as to be disabling in and of themselves. The nature of this type of arthritis is *not* of the progressive type that will cripple claimant. It would therefore be necessary to predicate a finding of disability on the subjective symptoms of pain which the claimant experiences. The referee does not question the claimant's allegations of pain. In order, however, to achieve a uniform application of the disability provisions of the Act on a nationwide basis, Congress has specified that a disability must be 'medically determinable'. The extent of pain is not medically determinable and therefore is, at best, only a secondary factor to be taken into consideration in determining whether a person is under a 'disability' as that term is defined in the Act."

As the Court interprets this statement, the Referee did not question the fact that

the plaintiff is afflicted with osteoarthritis and did not question the plaintiff's allegations of pain, which are supported not only by his own testimony but also by the medical evidence in the file. He apparently drew a distinction between the arthritis itself, that is to say the bony spurs growing on the plaintiff's spine, and the pain which is the concomitant of those spurs; and he then went on to hold that pain itself is not a "medically determinable" disability within the meaning of the statute. The Court does not consider the distinction valid, nor can the Court agree with the Referee that a disability due in substantial part to pain may not entitle a claimant to the benefits of the Act.

There is nothing in the statute or the legislative history which indicates a Congressional intent to exclude disability caused by pain, as contrasted to other types of disability, such as disability resulting from loss of limbs or sight or from mechanical disfunction of the limbs, joints, or other organs of the body. As a matter of fact, common experience and observation teach that in many cases of disability pain in one form or another is the chief and immediate disabling agent. An individual's body may be mechanically capable of use and function, but the pain resulting therefrom may be so great as to preclude them. Indeed, the nervous system in an effort to avoid agonizing pain may in effect impose immobility and inactivity upon the person affected; and in such a case the disability is no less real than it would be if the patient had lost the mechanical use of his body.

The Referee's view that pain cannot serve as a basis of disability under the Act seems to stem from a belief that "the extent of pain" is not "medically determinable". But, it is the "disability" that must be "medically determinable" and not the "extent of pain". Granting that pain, like some other symptoms of human ailments, is subjective and that its degree and intensity cannot be precisely determined or mathematically measured, and granting that in instances even its

existence cannot be so determined, it does not follow that in all cases medical men cannot infer from the statements of the patient, their observations of him and his conduct, and from the existence of phenomena such as arthritic spurs, which are calculated to produce pain, that pain exists, and rationally conclude that such pain is sufficient to prevent physical exertion.

The question for the Referee's decision in this case was not whether the plaintiff was suffering as much as or more than others in the same situation might suffer, or as to exactly how much he was suffering. Rather, the question was whether his admitted pain considered along with all other evidence of disability was sufficient to render him incapable of engaging in a substantial gainful activity; and the Court feels that the affirmative of that proposition was so abundantly established by the evidence that the Referee's contrary finding was, in a legal sense, arbitrary and not supported by substantial evidence.

While the decision of the Referee, at least to some extent, implies that there are activities in which the plaintiff could engage and for which he is qualified by training and experience, he does not suggest the nature of those activities; and the Court is convinced that there are no such activities. The plaintiff was 59 years of age at the time of the hearing before the Referee; he is 62 years old now; he has a limited education, and has heretofore earned his livelihood by physical toil. His inability to perform physical labor necessarily means that he cannot engage in any substantial gainful activity.

It is, therefore, considered, ordered and adjudged that the plaintiff's motion for summary judgment be, and it hereby is, granted, that the defendant's cross-motion for summary judgment be, and it hereby is, denied, and that the case be remanded to the defendant Secretary with directions that the plaintiff be granted a period of disability from the date of his last work and such disability insurance

benefits as he would have been entitled to had his initial application been approved. Dunn v. Folsom, supra, 166 F. Supp. at page 49.