Carl O. WOOLRIDGE, Plaintiff,

v.

Anthony J. CELEBREZZE, Secretary of
Health, Education, and Welfare,
Defendant.

Civ. A. No. 715.

United States District Court
S. D. West Virginia,
at Bluefield.

March 9, 1963.

E. D. Wells, Jr., Bluefield, W. Va., for plaintiff.

Harry G. Camper, Jr., U. S. Atty., Charleston, W. Va., for defendant.

HARRY E. WATKINS, District Judge.

Plaintiff seeks judicial review of the final decision of the Secretary of Health, Education, and Welfare that he was not entitled to a period of disability and to disability insurance benefits under sections 223 and 216(i) of the Social Security Act, as amended. For the reasons hereinafter stated, it is now found that the decision of the Secretary is not supported by substantial evidence and that defendant's motion for summary judgment should be denied, and that

plaintiff's motion for summary judgment should be granted.

On October 19, 1960, plaintiff filed an application for a period of disability and for disability insurance benefits in which he alleged that he became unable to work on June 30, 1956, at age 26, because of "back troubles, bad nerves." This application was denied by the Bureau of Old-Age and Survivors Insurance both initially and upon reconsideration. On March 1, 1962, a hearing examiner of the Bureau of Hearings and Appeals also found that plaintiff was not entitled to a period of disability and to disability insurance benefits. This decision became the final decision of the Secretary when the Appeals Council denied plaintiff's request for review on May 9, 1962.

In order to meet the statutory definition of disability, plaintiff has to establish that he had been continuously precluded from engaging in any substantial gainful activity by a disabling impairment which began no later than January 1, 1961, for entitlement to disability insurance benefits, and no later than January 19, 1961, to establish a period of disability under the instant application. He met the "insured status" requirements at the time of his alleged disability and continued to meet these requirements until June 30, 1961.

In reviewing cases of this type, it must be remembered that this court is limited to a determination only as to whether the Secretary's decision is supported by substantial evidence. It is not a trial de novo. Whether this court, if it were acting as the arbiter of the facts presented at the hearing, might have arrived at a conclusion contrary to the one reached by the Secretary is of no moment if that decision is supported by substantial evidence. As this court observed in Carpenter v. Flemming, D.C., 178 F.Supp. 791, substantial evidence is more than a scintilla but less than a preponderance. Also if there is enough evidence to justify a refusal to direct a verdict, if the case had been tried before a jury, then there is substantial evidence.

In deciding the question of disability, consideration must be given to the plaintiff's age, training, education, and work experience.

In this record there are twenty-three medical reports prepared by various doctors. In his written opinion denying plaintiff's claims, the hearing examiner did not discuss each of these reports separately, but gave a summary statement of the facts, including the findings of the doctors in chronological order. This court is of opinion that such statement of facts by the hearing examiner is, on the whole, a very fair statement of the evidence in this record. However, the court disagrees with the conclusions therein reached and finds that the decision of the hearing examiner, which is now the decision of the Secretary, is not supported by substantial evidence.

The following facts, apparently undisputed, appear from the opinion. Plaintiff is now only 32 years of age. He claims that he became unable to work on June 30, 1956. His history of a bad back goes back to the time he was a child. He reported to doctors at St. Albans Sanatorium that a log rolled over him and caused him to have some difficulty with his lower back. This was followed by a fall in 1953, which put him in the hospital, where a disc was removed from the fifth lumbar space. Plaintiff, then only 22 years of age, resumed his work about four or five months after the operation. From 1950 to 1956 he was employed in the coal mines. After a period of about a year he began complaining of his back again, and on August 4, 1955, he underwent the second major operation on his back. This time the posterior elements of the L5 vertebra were removed because of spondylolisthesis of the L5, S1 area. Following the second operation he developed delirium tremens while in the hospital. After being discharged from the hospital, he resumed his previous work in the coal mines in the early part of 1956, whereupon he developed low back pain with some radiation of the pain to both legs. His return

to work in the mines was against medical advice as he had been advised to seek some other occupation after the second operation. This was again urged upon him when he complained of back pains on July 24, 1956. He was hospitalized at St. Albans Sanatorium, a mental institution, from September 17, 1956, to October 13, 1956, for anxiety reaction with conversion symptoms and the excessive use of alcohol, at which time a physical examination at the mental institution failed to reveal any definite organic pathology. A mental examination revealed a rather tense individual, whose chief complaint was pain in his lower back. At times he complained of a drawing sensation down his left leg. There was no evidence of any psychosis, the feeling was that he had a chronic anxiety reaction with conversion symptoms with the excessive use of alcohol. He was again hospitalized for alcoholism for two days in September, 1957. The X-ray examinations revealed a first degree spondylolisthesis of the lumbosacral spine, apparently due to a congenital anomaly, and sclerosis of both sacroiliac joints, which was thought to represent an early Marie-Strumpell depression which the plaintiff exhibited, and which definitely indicated a rheumatoid arthritis, although other signs of Marie-Strumpell arthritis were absent. He was fitted with a lumbosacral support, but still continued to complain of back pain. On February 10, 1959, he was complaining of fatigue, weakness, nervousness, and pain in the lower back radiating to both thighs and legs after lifting. Although his complaints appeared to be honest and truthful, the only abnormality that could be found was the first degree spondylolisthesis of L5 on S1, and the only orthopedic suggestion that could be made was a fusion of the spine to relieve the pain. On November 5, 1960, Dr. Burke, although stating that plaintiff had a chronic psychoneurosis, Marie-Strumpell arthritis of the spine, and also suffered from chronic alcoholism following corrective surgery, stated there were no restrictions on his activity and that he could work but refused to work because of his back. There was no reason in the doctor's opinion why the claimant should not work in any gainful employment; however, the same physician, in a later report on March 8, 1961, making reference to the same impairments, and the additional impairment of a chronic duodenal ulcer, stated that, with poor mentality and the bad back, the plaintiff would not be productive in any field of endeavor and was entitled to social security benefits permanently and immediately.

A test made on June 17, 1959, revealed plaintiff had an IQ of 74, and was an individual of borderline intelligence, suffering from chronic anxiety reaction. It was further found that because of the low occupational and social adjustment potentials he was not a very good rehabilitation risk, although therapy might result in some marginal adjustment. On July 29, 1959, he was again seen in St. Albans for complaints of nervous episodes during which he would smother and be unable to catch his breath and his stomach would pain. He had discontinued the use of alcohol the previous February (1959), and has continued to refrain from its use. At the same time he was complaining of cramping in the muscles and dryness of his skin. He is an extremely dull individual with little potential for getting anything out of psychotherapy either on an in-patient or out-patient basis.

The record also shows that plaintiff had two bouts with pneumonia in late 1957 and 1959. He completed the fourth grade. An examination of the questions propounded to him and his answers at the hearing shows his poor degree of understanding and intelligence. Prior to working in the coal mines he had helped his father log timber. He was declared unfit for military service. Two separate psychiatric and psychological clinics have found that since 1956 or early 1957 he has been suffering a chronic and very real anxiety neurosis, so severe as to be an impairment to his rehabilitation, and that he offers little hope for success so far as rehabilitation to other skilled or semi-skilled employment is concerned.

He lacks subjective motivation and his capacity for being motivated by external stimuli is about zero. Even if he lived in a community where there was an abundance of work opportunities, he is neither trained nor suitable for anything other than heavy manual labor for which he is physically disabled. He is not the type who would be desirable to any employer. It was his severe physical disability which caused him to become disabled from employment in 1956 and, shortly thereafter, to enter upon a brief period of chronic alcoholism. It was not the alcoholism which caused him to become disabled.

The definition of disability relates to the individual claimant and is not concerned with the objective standard man of ordinary and customary intelligence and abilities. It relates to this plaintiff and the effect of this impairment on him with such abilities and inabilities as he possesses. In considering this case we must consider both the physical and mental impairment of this young man.

■ From this record it is abundantly clear that this young man is permanently and completely disabled from gaining even a meager livelihood through any activity involving manual labor, the only work he has ever known or been able to do. He is a person of very limited mentality and with no background of experience from which to draw. He lacks any special skills or native gifts which can be channelled into substantial gainful employment.

There being no substantial evidence to support the Secretary's decision that from June 30, 1956, through January 19, 1961, plaintiff was not disabled, within the meaning of the Act, that decision must be reversed; the Secretary's motion for summary judgment is denied; plaintiff's motion for summary judgment is granted; and this case is remanded to the Secretary with directions that the plaintiff be granted a period of disability and disability insurance benefits in accordance with the views herein expressed.