Elisha KELLY, Plaintiff,

v.

Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 4013.

United States District Court
W. D. South Carolina,
Greenwood Division.

Aug. 21, 1963.

612

W. H. Nicholson, Jr., Greenwood, S. C., for plaintiff.

John C. Williams, U. S. Atty., Robert O. DuPre, Asst. U. S. Atty., Greenville, S. C., for defendant.

WYCHE, District Judge.

This case is before me upon the complaint of the plaintiff seeking a review of the final decision of the Secretary of Health, Education and Welfare, in accordance with § 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g), holding that plaintiff was not entitled to a period of disability and disability insurance benefits.

The plaintiff filed application to establish a period of disability and for disability insurance benefits on September 29, 1959, alleging that he became unable to work on June 4, 1952. A hearing was held before a Hearing Examiner of the Social Security Administration who rendered her decision on October 31, 1961, finding that the claimant was not entitled to a period of disability and to disability insurance benefits, which decision became the final decision of the Secretary when the Appeals Council denied the plaintiff's request for review on January 17, 1962.

Plaintiff last met the statutory earnings requirements for disability purposes in the calendar quarter ending September 30, 1952, therefore, he had to establish the existence of a statutory disability commencing on or before September 30, 1952, and continuing to September 29, 1959, the date of his application.

The plaintiff was born March 23, 1907. He finished the eighth grade in school when he was nineteen years old. His employment history shows a background generally in the nature of heavy manual labor, first farming, then operating a grist mill, garage and blacksmith shop, driving a truck, working in a textile mill and as a painter for construction

companies. He worked for a while as a used-car salesman. He is married and has four children. His wife works in a blouse plant when she is able to work.

On May 4, 1952, while painting the tin roof of a house, the roof gave way and plaintiff fell from the edge of the house, breaking his dentures, eyeglasses, and fracturing his pelvis and right hip, tearing his kneecap loose from his right knee and rupturing his right eardrum. He has had two operations on the right hip and several hospitalizations for treatment of complications resulting from surgery. He has been under the care of various physicians since that date and has not been able to resume any kind of employment. The Department of Vocational Rehabilitation has provided the hospitalization and medical care for the plaintiff.

Plaintiff is unable to drive an automobile and does not own one. He has to get up sometime at 4:30 in the morning because of the pain in his hips and down his legs and spine, he suffers continuous pain in his right hip and lower leg. His right leg gives way unexpectedly and he falls occasionally. He has used crutches or a cane since the accident. He spends his time during the day sitting on a cushion in a chair and listening to his radio. He walks sometime from the house to the mail box, a distance of approximately fifty feet. He cannot ride in an automobile unless he takes up the entire back seat and he cannot ride on a bus or other public transportation, and he cannot go to Church. He sleeps on two hard orthopedic mattresses and uses five pillows to prop himself.

Several of plaintiff's neighbors said that since plaintiff's accident in 1952, they had never see him do any work, that they had heard him complain of the pain he suffers and that they had never seen him walk without a cane or crutches or by pushing a chair along in front of him, and that in their opinion the plaintiff is not able to undertake any gainful employment, that he is totally disabled for all practical purposes.

Dr. W. J. Holloway says in a statement dated February 13, 1961, "This is to certify that Mr. Kelly has been seen by me off and on for seven or eight years. He has marked degenerative arthritis of the spine and is unable to do any type of gainful work." And, on March 24, 1961, he says that he had not seen the plaintiff as a patient since 1958, that at that time he had some stiffness of both legs as the result of an accident several years previous to 1958; that plaintiff was admitted to the hospital on July 3, 1958, for repair of an inguinal hernia.

Dr. James A. McQuown, an orthopedic surgeon, has done several operations on plaintiff's hip, including two bone grafts; on August 6, 1952, he entered on his records the history of plaintiff's fall from the top of a house and the resulting dislocation of the right hip with associated fracture of the pelvis and hip for which he recommended arthrodesis of the hip; on August 26, 1952, his records show fusion by pinning and bone graft were done; thereafter the plaintiff developed ulcers on his leg thought to be due to localized insufficiency of venous circulation (stasis); on April 22, 1953, the ulcer had healed and a second bone-graft was done; on April 14, 1954, Dr. McQuown stated "This has certainly been a disappointing case to me in that I have felt that two very adequate fusions have been done, but this patient seems to be one who does not readily lend himself to arthrodesis." However, he wrote the Vocational Rehabilitation supervisor on August 5, 1954, that plaintiff had a good arthrodesis, and that he was ready for some type of employment and that he could best be employed where not required to stand or climb, but in June, 1955, he was continuing to treat the plaintiff for ulcerations of his leg.

Dr. Klauber, a radiologist, in a statement dated May 3, 1954, said, " * * * It would appear that the lower most graft is incorporating to some degree although union is certainly not by any manner or means complete."

Dr. E. O. Devore, Jr. said on September 16, 1958, "This is to state that Elisha Kelly is permanently disabled to be gainfully employed."

Dr. W. P. Tinkler in a report dated December 9, 1959, says that the previously described fusion procedure on the right hip is again noted. An intramedullary nail has been placed through the femoral head and neck and into the acetabulum and several large areas of bone graft are present with a metallic screw maintaining a portion of the bony graft into the greater trochanter on the right. The joint space at the hip on the right is practically obliterated. There is minimal resorption of bone about the nail.

Dr. J. Roland McKenney examined the plaintiff on December, 1959, and in his report says: It is obvious that the patient has difficulty with his right hip which is fused. He also has moderate varicosities but these do not appear to be of any significance. He obviously has a marked conversion reaction to the right leg. It is felt that the pain described is related to the disability in his leg.

Dr. William F. Lummus, an internist, said on January 17, 1961, "Mr. Kelly has been under my care off and on since 5-8-60 suffering from a chronic duodenal ulcer, arthritis of the spine, and first degree spondyolithesis of L5. I consider him totally and permanently disabled to be gainfully employed."

Dr. S. H. Huff, Jr., an orthopedic surgeon, examined the plaintiff on October 5, 1961, and summarized his opinion as follows: *"DISPOSITION*: This patient has a fixed and solidly fused hip, which in the great majority of cases, is painless. He has evidence of varicosities in the lower extremity on this side, which are now healed. His main difficulty is subjective pain and tenderness in his hip, leg, and back."

Dr. Joseph J. Nannarello, a psychiatrist, examined the plaintiff and concluded, *"IMPRESSION*: Conversion Reaction and anxiety reaction, chronic moderately severe, manifested by preoccupation with physical complaints, tension and depression. I do not see evidence of any psychotic process however, the tension, anxiety and marked preoccupation with his physical condition certainly adds significantly to his incapacity. Prognosis is poor."

In reviewing cases of this type this court is limited to a determination only as to whether the Secretary's decision is supported by substantial evidence. It is not a trial de novo. Whether this court, if it were acting as the arbiter of the facts presented at the hearing, might have arrived at a conclusion contrary to the one reached by the Secretary is of no moment if that decision is supported by substantial evidence. Substantial evidence is more than a scintilla but less than a preponderance. Also if there is enough evidence to justify a refusal to direct a verdict, if the case had been tried before a jury, then there is substantial evidence. Woolridge v. Celebrezze, (D.C.W.Va.), 214 F.Supp. 686 (1963).

The question to be resolved is whether, beginning on or before September 30, 1952, when plaintiff's insured status for disability expired, and continuously thereafter, the plaintiff has been under a "disability", which the Act defines as "Inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration."

While plaintiff is not bedridden or at death's door, I do not believe that such conditions are what is meant by "disability" as used in the Act. As stated in Aaron v. Fleming, D.C., 168 F.Supp. 291, 295, "Even though the Act is worded in strong language and the Congressional history indicates a strict policy of application, to conclude in this case that the plaintiff is not 'disabled' within the meaning of the Act would make 'disability' commensurate with 'helplessness', 'bedridden,' or 'at death's door.' No matter how infirm, or disabled, or sick a man is, if he still possesses some of his faculties and some degree of mobility, he is not in the strictest sense unable to perform 'any substantial gainful activity.' I do not interpret the Act to apply only to the

totally helpless and bed-ridden nor to those at death's door. If a wage earner has the inability to engage in 'any substantial gainful work' which is commensurate with his education, training, experience, and physical and mental capacities, then he should be given the benefit of the 'disability freeze.'" See, also, Corbin v. Ribicoff, D.C., 204 F.Supp. 65.

■ Three doctors expressed the opinion that plaintiff was disabled and unable to be gainfully employed and the psychiatrist who examined the plaintiff says "prognosis is poor". The expert opinions of physicians as to disability are not binding on the Examiner, but an expert opinion to that effect which is not seriously controverted by substantial evidence to the contrary supplies this court with a proper ground, inter alia, for reversal. Teeter v. Flemming, 270 F.2d 871, 77 A.L.R.2d 636 (7 Cir., 1959); Pope v. Celebrezze, 209 F.Supp. 392 (D.C.1962).

■ The fact that there is such a subjective symptom as pain does not mean that it ranks as a lesser type of disability. In the case of Lewis v. Flemming, 176 F.Supp. 872, on page 876 (E.D. Ark.1959), it was stated: "There is nothing in the statute or the legislative history which indicates a Congressional intent to exclude disability caused by pain, as contrasted to other types of disability, such as disability resulting from loss of limbs or sight or from mechanical disfunction of the limbs, joints, or other organs of the body. As a matter of fact, common experience and observation teach that in many cases of disability pain in one form or another is the chief and immediate disabling agent. An individual's body may be mechanically capable of use and function, but the pain resulting therefrom may be so great as to preclude them. Indeed, the nervous system in an effort to avoid agonizing pain may in effect impose immobility and inactivity upon the person affected; and in such a case the disability is no less real than it would be if the patient had lost the mechanical use of his body."

In the case of Butler v. Flemming, (5 Cir., 1961), 288 F.2d 591, at page 595,

it was stated: "* * * Perhaps it is true that history teaches that 'A man may have to endure discomfort or pain and not be totally disabled; much of the best work of life goes on under such disabilities * * *.' But the purpose of much social security legislation is to ameliorate some of these rigors that life imposes. Congress has in effect stated that if a person is unable except under great pain to engage in any substantial gainful activity in which he might be employable, taking into consideration his age, training, work experience and physical and mental capacities, he shall be deemed to be disabled for the purposes of this Act." See also, Kerner v. Flemming, (2d Cir., 1960), 283 F.2d 916; Flemming v. Booker, (5th Cir., 1960), 283 F.2d 321.

The definition of disability relates to the individual claimant and is not concerned with the objective standard man of ordinary and customary intelligence and abilities. It relates to this plaintiff and the effect of his impairments upon him with such abilities and inabilities as he possesses. In considering this case both the physical and mental impairment of this comparatively young man must be considered. See, Woolridge v. Celebrezze (D.C.W.Va.1963), 214 F. Supp. 686.

■ Plaintiff's physical and mental capacity to resist or adapt to his impairments is a proper basis for evidentiary inferences on these matters. Ollis v. Ribicoff (D.C.N.C.1962), 208 F.Supp. 644 at 648; Underwood v. Ribicoff (4 Cir., 1962), 298 F.2d 850. The culminating effect of plaintiff's ailments must be weighed solely on the basis of the effect upon this particular man, not upon what the effects might be on others. The Act is concerned not with a standard man of ordinary and customary abilities, but with the particular person who may claim its benefits and the effect of the impairment upon that person, with whatever abilities or inabilities he has. Brown v. Celebrezze (D.C.S.C.1962), 210 F.Supp. 692, 694, quoting from Klimaszewski v. Flemming, D.C., 176 F.Supp. 927.

My review of the entire record convinces me that the plaintiff's earning capacity and capabilities in engaging in any substantial gainful activity are negligible if not non-existent.

 After a careful examination of the record in this case and the foregoing authorities, I am of the opinion that the final decision of the Secretary is not supported by substantial evidence and is clearly erroneous. On the contrary, the conclusion that plaintiff is unable to engage in any substantial gainful activity appears self-evident to me. Plaintiff in this case is the victim of medically determinable physical impairments of serious and substantial proportions which can only be expected to result in death or to be of long-continued and indefinite duration. As a direct result of his combined impairments plaintiff has been unable since May 4, 1952, to follow his employment in manual labor. Plaintiff's combined physical and mental impairments, when considered in connection with his individual circumstances of age, work experience, education, training and skill, serve to eliminate effectively, any reasonable possibility of suitable employment or employment for which plaintiff is qualified; he is unable to perform any substantial service with reasonable regularity in some competitive employment or self-employment.

I must conclude, therefore, that the findings of the Secretary as to the establishment of a period of disability and disability insurance benefits are not supported by substantial evidence on the record considered as a whole and under the authority for appeal given by 42 U.S.C.A. § 405(g) the conclusion of the Secretary that the claimant was not entitled to the period of disability and the disability insurance benefits was clearly erroneous, was incorrect, and must, therefore, be reversed.

It is, therefore, ordered, that the decision of the Secretary in this case be and the same is hereby reversed, with direction that judgment be entered for the plaintiff.