**Julian H. BAGWELL, Sr., Plaintiff,**

v.

**Anthony CELEBREZZE, Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. 4183.**

United States District Court
W. D. South Carolina,
Greenville Division.

Aug. 22, 1964.

Joe Robert Hooper, Greenville, S. C., for plaintiff.

John C. Williams, U. S. Atty., for Western Dist. of South Carolina, for defendant.

HEMPHILL, District Judge.

This action was brought by the claimant, Julian H. Bagwell, Sr., against the Secretary of Health, Education, and Welfare, pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405 (g), to obtain judicial review of a final decision of the Secretary denying his application for disability insurance benefits under sections 216(i) and 223 of the Act, 42 U.S.C. §§ 416(i) and 423.

The Court is not empowered to try the case de novo, but by the same token, it must not abdicate its traditional function to determine whether the "record as a whole" supports the conclusion of the Secretary. If the findings are supported by substantial evidence, they shall be considered conclusive. The substantiality of the evidence to support the Secretary's finding is the basic issue before the Court. Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964).

The plaintiff last met the special earnings requirement for disability purposes on September 30, 1957. Thus, in order for him to have qualified for benefits, the evidence must have established that he

was prevented continuously from doing substantial gainful work since on or before September 30, 1957. The hearing examiner concluded that the plaintiff had failed to meet this burden of proof.

The record reveals plaintiff was born in 1921. He stated initially that he had a seventh grade education, but later testified he had only completed the third grade and could only read and write "a little". Plaintiff considered himself a plumber having done this type work from 1939 to 1951 or 1952. Prior to that time he had been a laborer and had helped a cousin make tombstones and monuments. In 1952 or 1953, during his final period of employment, he was a laborer in a lumber yard. Plaintiff testified that while working in the lumber yard, he hurt himself while picking up one end of a 6″ x 8″ timber, 42 feet long. He thought he had suffered a "dropped stitch", but this turned out to be a "slipped disc". Plaintiff has not worked since this employment in the lumber yard. He served in the Navy during World War II from 1944 to 1945, and after being discharged he went to a G.I. cabinet-making school for twelve or fourteen months. He testified; however, that he had never made a cabinet.

At the hearing on April 24, 1962, plaintiff testified that he had his first black out spell or seizure in 1944 when he was on Guadalcanal, but that as the years progressed they had become of increasing longer duration and more frequent. In the last part of 1953 or 1954 he indicated that he had three or four spells a day. His most recent spell had occurred one week prior to the hearing. During one of these seizures in 1952, plaintiff testified that he had fallen and injured his right arm, breaking it in three places. The hearing examiner questioned him about this arm:

"Q. When they took the cast off, what happened?

"A. Well, I just couldn't hardly do nothing with it.

"Q. Why?

"A. Well, it was stiff, and I finally got it—

"Q. They gave you physical therapy, didn't they, to get it back in use again?

"A. Yes.

"Q. Well, you must have gotten pretty good use of it, to go to work in a lumber yard.

"A. Well, it wasn't too good, but I did the best I could 'cause I had to make a living.

\* \* \* \* \* \*

"EXAMINER: Let the record show that the claimant demonstrated that he could only raise the right arm, with the help of the left, to approximately three inches above the waistline.

"CLAIMANT: There's still a staple in there.

"Q. Is that a frozen joint?

"A. Yes.

"Q. The right shoulder joint is a frozen joint? The elbow isn't, is it?

"A. No.

"Q. Now, when you hold your arm in that position, can you bend it up like this?

"A. By pulling it up.

"Q. Can you straighten it out? Is that the position you put it in when you put your shirt on— let it hang down and pull the sleeve up over it?

"A. Yes, and my wife buttons my shirt.

"Q. Can't you button it with your left hand?

"A. I can, but it takes quite a while.

"Q. Can you dress yourself \* \* \* by yourself?

"A. No.

"Q. Can you put your pants on by yourself?

"A. No. I can pull 'em up, but she has to zip 'em up and fasten my belt for me. And if I wear overalls, she has to fasten the galluses for me.

"Q. Would you let me see your hands, please, sir? Just open them up like this—

"EXAMINER: Let the record show that the right appears to be swollen—and the left hand has evidences of nicotine from cigarettes, but there are no evidences of callus or other indications that he has done any kind of work activity."

Claimant's counsel examined his client and the following colloquy is disclosed in the record:

"Q. Mr. Bagwell, are you able to drive an automobile at the present time?

"A. No.

"Q. Have you been advised not to drive one?

"A. The doctors told me absolutely not to drive a car.

"Q. When did they tell you that?

"A. On several occasions.

"Q. Well, did they tell you before September of '57?

"A. Yes.

"Q. Why have they advised you this?

"A. They said I might have a seizure and kill myself and someone else, or both.

 * * * * * *

"Q. Do you ever travel alone?

"A. No.

"Q. Why is that?

"A. Well, the doctors advised me to have someone with me at all times.

"Q. Do you take any medication for these seizures?

"A. Yes, sir, I have it right here."

The medical evidence is voluminous, and sometimes conflicting, but there can be no doubt that plaintiff had severe disability of his right arm in September, 1957. Witness the following statement of Dr. N. H. Prentiss, of the Veterans Administration Hospital, dated November 29, 1957:

*"Course In Hospital:* Because of recurrent spontaneous dislocations of the shoulder, in spite of previous more conservative treatment it was decided to perform a Bankart reconstruction operation. This was performed on 8/28/57 by Dr. Henry Severn, consultant in Orthopedic Surgery. Following recovery from surgery, this patient was transferred to Physical Medicine Rehabilitation Service for intensive physical therapy follow up. In spite of intensive physical therapy it became obvious that this man would from now on be severely handicapped. Forward flexion at the shoulder girdle is limited to 90 degrees. Abduction at the shoulder girdle is limited to 80 degrees. Internal and external rotation is limited to 5 degrees. Because of this severe limitation, this patient was referred to Clinical Psychologist for vocational counseling. It was felt that no further benefit could be obtained by keeping the patient in the hospital and continuing his physical therapy. He was therefore, discharged Maximum Hospital Benefits on November 20, 1957."

It is important to note that the surgery referred to above was performed on August 28, 1957, over a month before plaintiff's "inclusion" period expired.

Plaintiff testified at great length about his epileptic seizures and "black outs". He stated that it was not possible to predict the frequency or duration, and he had little or no forewarning of an impending episode.

All of the doctors mention, in one way or another, these "black outs"; all saying that the cause is idiopathic (unknown).

Dr. B. B. Bagby, Jr., Chief, Physical Rehabilitation Service, Veterans Administration Hospital, Oteen, N. C., stated that plaintiff has been unable to work since 1954.

Dr. B. C. McLawhorn of Greenville, S. C., stated that plaintiff had been "unable to work because of weakness of right arm and epilepsy". He indicated further that claimant is "seen by me frequently —sometimes daily for black-out spells and nausea".

Dr. E. G. McMillan of Greenville, S. C. said that plaintiff's activities were "entirely restricted", and that the duration of disability was "indefinite". He stated that he had been giving him therapy for epilepsy and high blood pressure since 1954.

As was stated previously, it is not the Court's function to try the case de novo, nor overturn a decision of a hearing examiner unless it is not supported by substantial evidence. But, if "reliance has been placed upon one portion of the record to the disregard of overwhelming evidence to the contrary, the Courts are equally bound to decide against the Secretary". Thomas v. Celebrezze, supra 331 F.2d at 543.

It is true that the inability to perform a particular job, in itself, is not "inability to engage in any substantial gainful activity", Gotshaw v. Ribicoff, 307 F.2d 840, 845 (4th Cir. 1962), but the impairment, or degree thereof, must be viewed in the context of the individual claimant. The important consideration is the effect of the impairment on the individual, not the objective standard man of ordinary and customary intelligence and abilities, but with such abilities, and inabilities as the individual possesses. Woolridge v. Celebrezze, D. C., 214 F.Supp. 686; Kelly v. Celebrezze, 220 F.Supp. 611, 614, 615 (D.C.W.D.S.C. 1963).

"The expert opinions of physicians as to disability are not binding on the Examiner, but an expert opinion to that effect which is not seriously controverted by substantial evidence to the contrary supplies this court with a proper ground, inter alia, for reversal." Kelly v. Celebrezze, supra, 220 F.Supp. at 615.

In the case at bar, the claimant is admittedly a relatively young man, but this "relatively young man" has had very little education and his only training has been as a plumber. The question then arises, is a relatively uneducated person whose only training has been as a plumber "disabled" when he is subject to epileptic seizures and can only use one hand effectively? The only answer that reasonably follows is that this individual is "disabled", in that he is unable to engage in any substantial gainful activity within the meaning of the Act.

Accordingly a review of the record, viewed as a whole, convinces this Court that plaintiff's earning capacity and capabilities in engaging in any substantial gainful activity within the meaning of the Act are negligible, if not non-existent.

The evidence overwhelmingly supports the plaintiff's claim, but even if it did fall somewhat short of an "overwhelming" case, the law would still favor the claimant. The law favors a liberal construction in favor of the claimant. Dean v. Flemming, 180 F.Supp. 553, 556 (D.C.Ky.1959). For as the Court said in Little v. Department of Health, etc., Social Security Administration, 173 F. Supp. 276, 277 (S.D.Miss.1959) "it must be assumed that the lawmaker intended to provide relief in meritorious cases * * * for those who, through unfortunate circumstances are deprived of the ability to earn a living for themselves and their families."

The plaintiff has met the four elements of proof set out in Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962) and Jenkins v. Celebrezze, 335 F.2d 6 (4th Cir. 1964).

Accordingly, the Court finds that the final decision of the Secretary is not supported by substantial evidence and is clearly erroneous. It must, therefore, be reversed.

It is, therefore, ordered, that the decision of the Secretary be and the same is hereby reversed, with direction that judgment be entered for the plaintiff.

And it is so ordered.