**Emma S. DAVIS, Plaintiff,**

v.

**Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Social Security Administration, United States of America, Defendant.**

**No. 3053.**

United States District Court
W. D. South Carolina,
Greenville Division.

Sept. 12, 1964.

Theodore M. Burns, Jr., Greenville, S. C., for plaintiff.

Robert O. DuPre, Asst. U. S. Dist. Atty., Greenville, S. C., for defendant.

HEMPHILL, District Judge.

This is an action brought under Section 205(g) of the Social Security Act as amended 42 U.S.C. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare. Said final decision holds that plaintiff is not entitled to a period of disability or to disability insurance benefits under Sections 216(i) and 223 of the Act, respectively, 42 U.S.C. §§ 416(i) and 423, based on her application filed October 26, 1960.

The issue before the hearing examiner was whether a disabling impairment or combination of impairments was present on or before September 30, 1954, when the plaintiff last met the special insured status requirements set out in the Act. In support of her application, plaintiff submitted reports from the Greenville General Hospital and Dr. Herbert P. Bailey.

The reports from the Greenville General Hospital Clinic show that plaintiff was first seen there on September 16, 1958, at which time she related a history of "falling out spells" for 10 or 12 years prior thereto (i. e., beginning in 1946 or 1948) with loss of consciousness for one or two minutes. She had no fits or convulsions, and she was revived by spirits of camphor. There was no history of hospitalization. Physical and neurological examinations were negative, and there were no pathological reflexes. An electroencephalogram showed a pattern consistent with lobe epilepsy. Plaintiff appeared at the clinic on several occasions subsequently, and a note dated October 27, 1958, showed that she had had no more seizures and was doing well. She was treated with dilantin and phenobarbital, and on several subsequent visits, up to October 21, 1959, she reported that she had no seizures during any of the periods between her visits to the clinic. On November 13, 1959, she reported that she had had one mild seizure since her last visit, about three weeks previously; on July 6, 1960, she reported that she had had no seizures since her last visit to the clinic, three months earlier. The last clinic note, dated September 28, 1960, stated that plaintiff's chief complaint was a bad taste in the

mouth (she was in the process of having her teeth pulled). The hospital's diagnosis was petit mal epilepsy (a condition in which the person loses consciousness for brief periods).

Dr. Herbert P. Bailey submitted two reports, dated October 27, 1960, and February 2, 1961. Dr. Bailey treated the plaintiff on three occasions in December 1952 and did not see her again until October 27, 1960. In his first report, he stated that he had referred her to the epileptic clinic. His diagnosis was epileptic hypotension; blood pressure was 84/61. Plaintiff was having epileptic attacks "every week or two", even with dilantin sodium three times a day. In the 1961 report, Dr. Bailey stated that plaintiff was epileptic with low blood pressure and mentally very lethargic, slow to answer simple questions. She was having one or two attacks a day.

Plaintiff had completed five years of elementary school. Her longest vocational experience was that of a presser in a dry cleaning plant, but she had also worked in a cardboard factory receiving boxes from the assemply line and stacking them, and as a maid. Her social security earnings record depicts a very spotty employment history with small earnings. Her total earnings since 1941 (when the first entry appears) were $5,841.05. Her annual earnings ranged from a maximum of $1,855.13 in 1944 to no earnings prior to 1941, or in 1942, 1949, 1956, or after 1957. (In the last-named year she earned $76.00).

*The medical evidence establishes the presence of epilepsy. Dr. Bailey did treat her briefly in December 1952, but he never saw her again until October 1960.* This condition did not prevent her from working thereafter and in this regard it is of noteworthy significance that the plaintiff informed a social security representative on October 31, 1960, that she had not been to any doctor nor had she received any treatment until about a year prior to that interview, i. e., 1959. The hospital record shows, however, that she commenced treatment there in September 1958, but even this was four years after her insured status had expired on September 30, 1954. Patently she did not need medical attention and treatment from 1952 to 1958, and was able to work during that time. Thus the record amply supports the conclusion that the plaintiff's condition did not prevent work activity on or prior to September 30, 1954, when her insured status expired —if not as a clothes presser, at least as a box stacker or a maid, in both of which vocations she was experienced.

This interpretation is supported by the regulations of the Social Security Administration issued pursuant to the disability provisions of the Act. 20 C.F.R. 404.1502(a) states in pertinent part:

"Whether or not an impairment in a particular case constitutes a disability * * * is determined from all the facts of that case. Primary consideration is given to the severity of the individual's impairment. Consideration is also given to such other factors as the individual's age, education, training and work experience. However, medical considerations alone may justify a finding that the individual is not under a disability where the only impairment is a slight neurosis, slight impairment of sight or hearing, or similar abnormality or combination of slight abnormalities. * * * "

As has been observed, there is nothing to show that the epilepsy on or prior to September 30, 1954, when plaintiff's insured status expired, placed any limitations on the plaintiff's ability to work. And though the plaintiff's current condition is not relevant to the issues in this case, even the more recent evidence indicates that she is in good condition. The reports from the Greenville Clinic where she has been under medical supervision since September 1958 establish that her illness is well-controlled. Between September 1958 and September 1960, the date of the last clinic report, the hospital records show that the plaintiff reported only one mild seizure. The appearance of only one mild seizure over a two-year period is ample testimony to the fact that

the epilepsy is under excellent control. The good current condition of the plaintiff provides further support for the conclusion that no impairment of significant consequence was present on or before September 30, 1954, when insured status expired.

The only basis the Court would have to reverse the Secretary's determination is that it is not supported by "substantial evidence". Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). The Court must not try the case de novo. Id. The Secretary has a right, and a duty, to weigh the evidence and to place a reasonable interpretation thereon. See Kelly v. Celebrezze, 220 F.Supp. 611, 614 (W.D.S.C.1963). This has been done here.

The evidence in the record, viewed as a whole, clearly sustains the proposition that the Secretary's determination is supported by substantial evidence. "It is established that the mere presence of disease or medically determinable impairment does not automatically entitle a claimant to a disability period or disability insurance benefits under the Social Security Act. Instead, the impairment must cause 'inability to engage in any substantial gainful activity.'" Gotshaw v. Ribicoff, 307 F.2d 840, 844 (4th Cir. 1962). The Court is mindful that the term *"any"* in the phrase "inability to engage in *any* substantial gainful activity" is not to be applied literally, but reasonably, taking into account the health, work experience, education, and employment opportunities of the individual claimant. See Gotshaw v. Ribicoff, id.; Thomas v. Celebrezze, supra, 331 F.2d at 546; and Bates v. Celebrezze (W.D.S.C.1964) 234 F.Supp. 439.

Accordingly, the Court finds that the Secretary's determination that plaintiff was able to engage in "substantial gainful activity" during times relevant here is supported by substantial evidence.

It is, therefore, ordered that judgment be entered for defendant.

And it is so ordered.