**Ellen H. GARRISON, Plaintiff,**

v.

**Anthony J. CELEBREZZE, Secretary of Health, Education, and Welfare, Defendant.**

**Civ. A. No. 4053.**

United States District Court
W. D. South Carolina,
Greenville Division.

March 10, 1965.

Theodore M. Burns, Jr., Greenville, S. C., for plaintiff.

John C. Williams, U. S. Atty., Greenville, S. C., for defendant.

HEMPHILL, District Judge.

Review of final decision of the Secretary of Health, Education and Welfare under provisions of Section 205(g) of the Social Security Act, as amended, 42 U.S.C. 405(g). Final decision of the defendant was rendered on January 30, 1962, when the Appeals Council denied the plaintiff's request for review.

Plaintiff last met the special earning requirement on June 30, 1954 and thus, under the Social Security Act, she must establish a disability as defined in the Act on or before that date. The hearing examiner held that the plaintiff had not established such disability and denied her benefits. Appeals Council concurred.

The plaintiff, age 42 at the time of the hearing alleged that she became disabled in 1949 due to low blood pressure and migraine headaches. She has an eighth-grade education, having started to work in the cotton mills at the age of 19

where she creeled and warped for approximately 11 years at the Dunean Mill. She claimed that she had suffered with migraine headaches since she was 11 years old and had been going to doctors for this ever since that time. Plaintiff was pregnant in March of 1949 when she quit work but, according to her, did not realize this at the time she quit. Her claim is that she suffers as much as 2 to 4 days each week with headaches. She testified "It's hardly a day or week that I don't have it" (headache). Plaintiff actually fainted the morning of the hearing; was nauseated during the hearing.

■ It appears that one of the items that the hearing examiner seemed to feel was of great significance in establishing no disability was that the plaintiff bore two children after she quit work. Apparently, however, she had some difficulty with the first child. In any event, the bearing of children does not constitute engaging in "substantially gainful employment". The mere fact that a person can have a child does not, per se, mean she is not disabled.

It is also significant that she testified, "You see, I can't go to church. I haven't been to church in three years. I can't go shopping." To a person in her evident station in life these excursions are important. In the textile section in which she lives, going to church is a recognized, expected, normal activity, and her inability to go corroborates her physical impairments. She also testified as to blackout spells.

Plaintiff testified that Dr. Blakely advised her to quit work in 1949. Dr. Blakely's report, dated February 6, 1960, substantiates this. His report shows that he has been treating the plaintiff since March of 1949 and that she had visited his office at frequent intervals, weekly, through 1960, diagnosing frequent severe migraine headaches. In another report, dated October 3, 1960, Dr. Blakely makes the same diagnosis, indicating that the plaintiff's condition is static and that improvement is very questionable. Dr.

Blakely ventures the opinion that the plaintiff is unable to work, and has been so unable for 8 to 10 years.

Dr. J. K. Holcombe, another physician, a gynecologist, reports migraine headaches in his report of 1959. This complaint was confirmed in the report of D. H. Warne, Claims Representative of O.A.C. On one report he indicated he could see the impairment of the left eye because of the affliction.

The chart record from Greenville General Hospital covers the admission of the plaintiff to the hospital on February 1, 1959, showing the present complaint to be extreme weakness and frequent migraine headaches. [It is recognized that she last met the special earnings requirements in June, 1954.]

Another admission to Greenville General Hospital shows a 5-months' pregnancy and inevitable abortion. Past history is shown as generally good except for the ever-present migraine headaches.

In September, 1959, a total hysterectomy was performed upon the plaintiff at the Greenville General Hospital. It is noted that the plaintiff was suffering migraine headaches at the time of her menstrual period and at the mid-cycle. Dr. Blakely, in his reports referred to above, makes several references to the plaintiff suffering from anemia, at one point diagnosing a recurrent anemia due to hemorrhage or diseases.

It should be noted that even the hearing examiner, in her report, seemed to feel that the fact that the plaintiff had to quit work in March of 1949, due to poor health; and yet was able to give birth to a child in December of that year had some significance. Certainly, this is not altogether the fault of the plaintiff. The hearing examiner also said that migraine headaches could be severe enough to be disabling; however, apparently she felt that they were not so severe in the case of the plaintiff.

The record points unwaveringly to the pain and discomfort of plaintiff due to the migraine headaches. Kelly v. Cele-

brezze, 220 F.Supp. 611 (W.D.S.C.1963), clearly points out the causal effect of pain and discomfort insofar as disability is concerned:

"The fact that there is such a subjective symptom as pain does not mean that it ranks as a lesser type of disability. In the case of Lewis v. Flemming, 176 F.Supp. 872, on page 876 (E.D.Ark.1959), it was stated: 'There is nothing in the statute or the legislative history which indicates a Congressional intent to exclude disability caused by pain, as contrasted to other types of disability, such as disability resulting from loss of limbs or sight or from mechanical disfunction of the limbs, joints, or other organs of the body. As a matter of fact, common experience and observation teach that in many cases of disability pain in one form or another is the chief and immediate disabling agent. An individual's body may be mechanically capable of use and function, but the pain resulting therefrom may be so great as to preclude them. Indeed, the nervous system in an effort to avoid agonizing pain may in effect impose immobility and inactivity upon the person affected; and in such a case the disability is no less real than it would be if the patient had lost the mechanical use of his body'." 220 F.Supp. at 615.

In this case, there are clearly substantial showings of a medically determinable impairment, but even if the pain were unaccompanied by any objectively observable symptoms which is nevertheless real to the sufferer and so intense as to be disabling it will support a claim for disability benefits. See Ber v. Celebrezze, 332 F.2d 293 (2nd Cir. 1964).

The Ber Case, supra, reasons, this Court thinks, as the Act intended:

"What one human being may be able to tolerate as an uncomfortable but bearable burden may constitute for another human being a degree of pain so unbearable as to subject him to unrelenting misery of the worst sort. Indeed, inasmuch as the applicable section of the Social Security Act requires a showing of a medically determinable physical or mental impairment, even pain unaccompanied by any objectively observable symptoms which is nevertheless real to the sufferer and so intense as to be disabling will support a claim for disability benefits." 332 F.2d at 299.

This Court applies the direction and reasoning of the Fourth Circuit Court of Appeals in Jenkins v. Celebrezze, 335 F.2d 6 (4th Cir. 1964). The four elements of proof there propounded have been met by the plaintiff. Of course the facts differ, but the pattern of evidence casts, as it were, the same shadow of distress that marks disability or inability to work. Claimant here has proven her inability to perform any substantial gainful activity. Thomas v. Celebrezze, 331 F.2d 541, 545 (4th Cir. 1964); Ollis v. Ribicoff, 208 F.Supp. 644 (W.D.N.C.1962).

This Court has previously indicated its concern over the almost iniquitous practice of basing denial of a claim on the *examination* of *one doctor*, on *occasion* of *one visit*; in fact, it is almost common knowledge among the textile areas that when one is sent to "one of them Security Doctors" that the report is adverse to that of practitioners of long acquaintance with and professional application to the particular patient. This Court feels that in every case consideration should be given to situations where that the doctors who felt the plaintiff was not substantially disabled were *not his* or *her treating* physicians. See Bates v. Celebrezze, 234 F.Supp. 349 (W.D.S.C. 1964). Note too Cyrus v. Celebrezze, 341 F.2d 192 (4th Cir. 1965), decided January 26, 1965.

"Congress has in effect stated that a person is unable except under great pain to engage in any substantial gainful activity in which he might be employable, taking into consideration his age, training, work experience and physical and mental capacities, he shall be deemed

to be disabled for the purposes of this Act." Butler v. Flemming, 5 Cir., 288 F.2d 591, 595; Kelly v. Celebrezze, 220 F.Supp. 611, 614 (W.D.S.C.1963).

In construing "disability" the Court must be ever mindful that the term relates to the individual claimant. The important consideration is the effect of the impairment on the individual, not the objective standard man of ordinary and customary intelligence and abilities, but with such abilities and inabilities as the individual possesses. Bagwell v. Celebrezze, 232 F.Supp. 989, 993 (W. D.S.C.1964); Perry v. Celebrezze, 236 F.Supp. 1, 4 (W.D.S.C.1964).

The evidence from the entire record, read as a whole, can lead to only one conclusion: the earning capacity and capability of the plaintiff to engage in substantial gainful activity is negligible, if not non-existent.

This Court therefore finds that the decision of the Secretary is not supported by substantial evidence on the record as a whole. That decision is set aside and the Clerk directed to enter judgment for plaintiff.

And it is so ordered.