Laura C. PERRY, Plaintiff,

v.

Anthony J. CELEBREZZE, Secretary of
Health, Education, and Welfare,
Defendant.

Civ. A. No. 4011.

United States District Court
W. D. South Carolina,
Greenville Division.

Dec. 14, 1964.

Theodore M. Burns, Jr., Greenville, S. C., for plaintiff.

John C. Williams, U. S. Atty., Greenville, S. C., for defendant.

HEMPHILL, District Judge.

This is an application brought under Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to review a final decision of the Secretary

of Health, Education, and Welfare. Said final decision holds that plaintiff is not entitled to a period of disability or to disability insurance benefits under Sections 216(i) and 223 of the Act, respectively, 42 U.S.C. §§ 416(i) and 423, based on her application filed on October 4, 1960.

The issue before the hearing examiner was whether a disabling impairment or combination of impairments was present on or before June 30, 1952, when the plaintiff last met the special insured status requirements set out in the Act. In support of her application, plaintiff submitted various medical reports and testified, without aid of counsel, in the hearing.[1] The hearing examiner concluded that she was not "disabled" within the meaning of the Act when she last met the special insured status requirements thereof.

■■ The issue before this Court is whether or not there is substantial evidence to support the Secretary's findings. As the Fourth Circuit Court of Appeals pointed out in Thomas v. Celebrezze:

"Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance. * * * The Secretary, and not the courts, is charged with resolving conflicts in the evidence, and it is immaterial that the evidence before him will permit a conclusion inconsistent with his. * * * If his findings are supported by substantial evidence, the courts are bound to accept them. * * * In short, the courts are not to try the case de novo. At the same time, they must not abdicate their

traditional function; they cannot escape their duty to scrutinize 'the record as a whole' to determine whether the conclusions reached are rational. * * * If they are, they must be upheld; but if, for example, reliance has been placed upon one portion of the record to the disregard of overwhelming evidence to the contrary, the courts are equally bound to decide against the Secretary. * * * In such a circumstance the courts are empowered either to modify or reverse the Secretary's decision * * *." (citations omitted) 331 F.2d 541, 543.

See also Bryant v. Celebrezze, 231 F. Supp. 524 (W.D.S.C.1964).

The evidence in the record reveals that the last time plaintiff had earnings posted to her account was in the calendar quarter ending September 30, 1947. Thus, under the Act, claimant last met the special insured status in the quarter ending June 30, 1952. Accordingly, it must be shown by plaintiff that she was under an impairment or combination of impairments of sufficient severity to prevent her from engaging in any substantial gainful activity up to June 30, 1952.

■ The evidence reveals that the plaintiff was born in 1914, that she went through the sixth grade of school where she learned to read and write, and that she first went to work for pay at age fourteen. This work was in a textile mill where she was a "spinner." A colloquy between the hearing examiner and claimant reveals the work of a "spinner:"

"Q: Will you tell me briefly what you did as a spinner?

---

1. Perhaps the lack of counsel at the hearing deprived plaintiff of valuable assistance when counsel was most meaningful, because at the hearing the record "crystalizes," Cf. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, and perhaps some time in the near future there will be a change. But, as the law now stands, the limitations on fees for counsel during these hearings seems to be a rather effective bar to the benefits of educated and trained advocacy. This Court certainly has no authority to legislate a change, but wisdom seems to say there is time for a change. As Justice Frankfurter noted in his dissent in Henslee v. Union Planters National Bank & Trust Co., 335 U.S. 595, 600, 69 S.Ct. 290, 293, 93 L.Ed. 259, "[w]isdom too often never comes, and so one ought not to reject it merely because it comes late."

"A: Well you run slides.

"Q: You mean that same machine?

"A: Yes sir.

"Q: It's a spinning machine?

"A: A spinning frame.

"Q: And what do you do in your work?

"A: Well, you run these bobbins until they fill up with yarn and the doffer doffs them off and you keep the ends up so the bobbins will fill up.

"Q: Now do you work one machine, one spinning frame?

"A: No I ran 10 * * * 12.

"Q: 12 spinning frames?

"A: Sometimes 10, and sometimes 12 * * * 10 was a set.

"Q: Now how many bobbins are on a machine?

"A: Well I just don't remember now * * * I think there was 14 stands long.

"Q: What is this stand, ma'am?

"A: Well a stand is where the * * * from one roller to the other * * * and it's 8 bobbins to a stand.

"Q: Now did you sit down to do this work?

"A: No sir, you keep on your feet going.

"Q: I see, you had to walk around the machine.

"A: Yes sir."

[This Court, convened and sitting in a community predominantly textile, and having intimate knowledge of the work plaintiff was called on to perform, recognizes, and here relates, that it was continuous, demanding and required her attention and movement over the entire work period, usually 8 hours, commonly termed a "shift."]

The record reveals that plaintiff made a claim for disability benefits in 1947, but that it was denied and she took no further action. Regarding this, the hearing examiner asked her:

"Q: Now in your earlier application for benefits you said that you became unable to work in 1947.

"A: That's when I went to the hospital and I wasn't able to go back to work then and then I wanted to go back to work in 1952 and the doctor told me I wasn't able to work.

"Q: Well what did you do between 1947 and 1952?

"A: Well, I just stayed at home and did what little housework I was able to do.

"Q: Now I understand you to say that you wanted to go back to work in 1952?

"A: Yes sir. I got to feeling a little better and the doctor told me I wasn't able to work, to stand on my feet the work I had to do.

"Q: And what did your housework consist of?

"A: Well just my cooking and a little housecleaning was all I was able to do.

"Q: And how big a house did you have?

"A: I have 4 rooms.

"Q: How many children are in your family?

"A: I had two then. Both are married now."

The evidence reveals that plaintiff began to lose weight and feel weak in 1947. She stopped working and was advised by her physician that it would be necessary for her to have a hysterectomy. When she was admitted to the hospital, lab tests disclosed that she had diabetes; so, the hysterectomy was postponed and treatment initated to bring the diabetes under control. [The operation was finally performed in July, 1960.] Claimant's therapy consisted of the usual diabetic diet and daily injections of insulin.

Between 1947 and 1952 or 1953 claimant described having experienced one diabetic coma; further that she had three or four more from 1957 up to the time of the hearing in 1961.

There is evidence of other bodily maladies, but they appeared, as factors to be considered, subsequent to the cut-off date.

The hearing examiner observed:

"[I]t is clear that the evidence established only that the claimant had a diabetic condition for which she was being treated by diet and insulin when the earnings requirements of the law were met.

"It is accepted general medical practice to treat patients suffering from diabetes with diet and insulin and it is general knowledge that persons so treated normally continue with their usual work. There is, however, always a chance that due to negligence or misjudgment a person who administers insulin to himself may not accurately judge the amount of insulin required to stabilize his condition in which case an insulin or diabetic coma may ensue. The fact that the claimant has experienced only 5 or 6 comas over a period of approximately 14 years is persuasive proof of the fact that the diabetic condition has been well controlled by the therapeutic regimen instituted by Dr. Clatworthy and that her condition has not been one of continued deterioration. It may be accepted that at the beginning of the disease and before the condition was diagnosed the claimant was losing weight and was weak. This, however, is the normal manifestation of the diabetic condition and, nowhere does the evidence establish that the claimant's condition was one of progressive deterioration. It also may be accepted that the claimant may have been unable to continue with the strenuous work of operating a great number of spinning frames in the textile industry in 1947 and 1948. The evidence does not show that her condition was so severely impaired, however, that she would have been unable to engage in an occupation requiring less strenuous activity such as clerking in a store or inspecting cloth in a textile mill."

The question now to be determined is whether or not the conclusion reached is supported by substantial evidence. It appears that it is. In view of the gratuitous comment offered in footnote 1, supra, the Court feels constrained to note that the record was scrutinized most carefully, with the thought in mind that claimant did not have assistance of counsel. There is just no way of getting around the hard headed fact that plaintiff was not so "disabled" up to the time she last met the earnings requirements of the Act that she was incapable of substantial work activity.

■ The Court will not sarcastically suggest exactly what type of job plaintiff was capable of performing up to the cut-off period, Cf. Thomas v. Celebrezze, supra. And there is a full recognition of her limited education and the other factors which are to be looked at in terms of the individual claimant, Bryant v. Celebrezze, 231 F.Supp. 524 (W.D.S.C. 1964), but it cannot be said, from a view of the entire record, that the Secretary's decision is not supported by substantial evidence.

Accordingly, the Court finds that the final decision of the Secretary is supported by substantial evidence and must be affirmed.

It is, therefore, ordered that the decision of the Secretary be and the same is affirmed, with direction that judgment be entered for the defendant.

And it is so ordered.