**Lillie BASS, Plaintiff,**

v.

**Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. AC–1400.**

United States District Court
E. D. South Carolina,
Columbia Division.

Feb. 8, 1965.

Kenneth L. Holland, and Murchison & West, Camden, S. C., for plaintiff.

Terrell L. Glenn, U. S. Atty., and Wistar D. Stuckey, Asst. U. S. Atty., Columbia, S. C., for defendant.

HEMPHILL, Chief Judge.

This action is on appeal from a decision of the Secretary of Health, Education and Welfare that the plaintiff was not "disabled" since July 18, 1962, within the meaning of the Social Security Act. This Court has authority to review a final decision of the Secretary under Section 205(g) of the Act, 42 U.S.C. § 405 (g). Plaintiff's administrative remedies were exhausted on February 12, 1964, when her request for review was denied by the Secretary and at that time plaintiff's right to seek relief in this Court arose.

Section 205(g) of the Act, 42 U.S.C.A. § 405(g), provides, *inter alia*, that "as part of his answer the Secretary shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based," and that "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." It also provides that "the findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *"

Plaintiff, Lillie Bass, applied for a determination of a period of disability insurance benefits under the Social Security Act on December 27, 1962, alleging that she first became unable to work because of heart trouble and diabetes on July 18, 1962. Her application having been denied, plaintiff made timely request for hearing before a hearing examiner and a hearing was subsequently held on October 14, 1963. An adverse decision was rendered on November 29, 1963, denying plaintiff's claim. The subsequent denial of her request for review on February 12, 1964, and the filing of her complaint places the plaintiff properly before this Court.

This Court must decide whether or not the Secretary's findings are supported by substantial evidence and as was cogently stated in the recent Fourth Circuit Court of Appeals decision in Thomas v. Cele-brezze:

> "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance. * * * The Secretary, and not the courts, is charged with resolving conflicts in the evidence, and it is immaterial that the evidence before him will permit a conclusion inconsistent with his. * * * If his findings are supported by substantial evidence, the courts are bound to accept them. * * * In short, the courts are not to try the case de novo. At the same time, they must not abdicate their traditional function; they cannot escape their duty to scrutinize 'the record as a whole' to determine whether the conclusions reached are rational. * * * If they are, they must be upheld; but if, for example, reliance has been placed upon one portion of the record to the disregard of overwhelming evidence to the contrary, the courts are equally bound to decide against the Secretary. * * * In such a circumstance the courts are empowered either to modify or reverse the Secretary's decision * * *."
> (citations omitted). 331 F.2d 541, 543.

The record reveals that plaintiff was born November 8, 1906, and went to the fifth grade in school. She started working in a textile mill as a spinner at the age of fifteen and worked at that job until July 18, 1962; a period of about forty-one years. The record shows no history of malingering and the plaintiff seems to have worked constantly until her health declined in 1962. Her earnings certification discloses full employment for the ten years prior to 1962, when she completed two quarters of work.

Plaintiff testified that Dr. Vincent advised her she was not able to work in July, 1962. She described her symptoms as an arthritic condition of the spine, knees and back weakness, blackouts and loss of feeling in the arms; shortness of

breath, dizziness, nervousness and bladder weakness with poor control; chest, shoulder and back pain.

A Medical Report by Dr. Charles P. Vincent states that the plaintiff became unable to work on July 18, 1962, and that the illness had its onset four years prior to the date of the report which was January 21, 1963. His diagnosis was osteoarthritis, possible coronary disease and angina, abdominal adhesions, and relaxed urethral sphincter. He described her condition as slowly progressive and advised avoidance of exertion and frequent bed rest each day. On mild exertion plaintiff experiences dyspnea and angina, according to Dr. Vincent. Spinal arthritis with shoulder joints also involved was noted together with 3 plus urine sugar. This doctor remarked that her symptoms were "strongly suggestive of coronary origin."

Dr. George S. Rhame submitted a medical report on December 28, 1962, which diagnosed plaintiff's condition as calification in the right shoulder, a narrowing of the 6th interspace, and osteoarthritic changes in the cervical spine. These observations were made after x-ray studies. Resultant limitation of the right shoulder and of the neck, with leg discomfort after standing at work were noted. This doctor advised the plaintiff to avoid standing for long periods, this recommendation being made on the basis of his final diagnosis of osteoarthritis of the cervical spine, sub-acute bursitis of the right clavicular region, varicosities of both lower extremities, nerve tension, recurrent cystitis, and obesity.

Dr. Bennie W. Marshall examined the plaintiff on February 11, 1963, and found enlargement of her heart, with blood pressure unstable (100/80–140/78). He noted limitation of movement in the shoulders with tenderness in the anterior aspect of the right shoulder. Dr. Marshall further noted that the plaintiff became quite dyspneic in doing the "masters two-step" exercise tolerance test and, in taking an electrocardiogram, found her in need of a glycerin tablet.

■ Testimony of Robert L. Brown, a vocational consultant, was concerned with jobs the plaintiff might be able to obtain and perform, but he admitted on cross-examination that there are few, if any, employment possibilities for persons of the plaintiff's background, age and experience. He further testified that the plaintiff's job as a spinner in the textile industry required a high degree of finger and hand dexterity. In reply to Mr. Brown's testimony about certain jobs in the small garment industry, Mrs. Myrtle Baker, who, from personal experience in that industry, told of the rigors such jobs entail. There may well be certain light jobs the plaintiff could perform with training but it was not the intention of Congress to exact as a condition precedent to maintenance of a claim for disability under the Act the elimination of every possibility of gainful employment. Farley v. Celebrezze, 315 F.2d 704, 708 (3rd Cir.1963).

■ The evidence reveals clearly that the plaintiff has limited education and that the only type of work she knows is in the textile industry. Judicial notice will be taken that the type work for which the plaintiff is qualified requires considerable exertion and dexterity.[1] The record, viewed as a whole, compels a finding that the plaintiff should be found "disabled" because of a combination of medically determined impairments. It is well settled that a disability under the Act may be resultant from a number of impairments, which, taken separately, might not be disabling, but their total effect, taken together, is to render the claimant unable to engage in substantial gainful activity.

Plaintiff, who had failed to respond to a letter offering vocational rehabilitation, had the following colloquy with counsel:

"Q. Would you have been better off financially if you had continued work?

1. See Bryant v. Celebrezze, 231 F.Supp. 524 (W.D.S.C.1964).

358

"A. I don't have no idea—financially I'd be better off if I could have held out to work, but I couldn't hold out.

"Q. But at that time though when you quit working, did you feel like you were going to have a hard time because you couldn't earn any more money?

"A. Yes, I felt like I would have a hard time but it's better to live and have a hard time than it is to die—and live off just what little bit you can make when you're not able to work.

"Q. At the time you were offered help by the Vocational Rehabilitation people, was your failure to respond due to the fact that you didn't want to take advantage of that program?

"A. No, I would have been glad to if it were something that I could have done but in my condition I know that I can't stand on my feet and work no more because in church I have to sit down to keep from falling. I have that weakness in my legs—my knees so bad. I used to could sing in the choir at church but now I don't have the breath to talk much less to—* * * *"

This colloquy helps considerably to throw light upon the "record as a whole."

This Court finds that the decision of the Secretary is not supported by substantial evidence. Every doctor has discovered impairments of a disabling nature and their findings, taken together, indicate that the plaintiff could work only by jeopardizing her life and by subjecting herself to pain and discomfort against her doctor's advice. "Congress has, in effect, stated that a person is unable, except under great pain, to engage in any substantial gainful activity in which he might be employable, taking into consideration his age, training, work experience and physical and mental capacities,

he shall be deemed to be disabled for the purpose of this Act." Butler v. Flemming, 5 Cir. 288 F.2d 591, 595; Kelly v. Celebrezze, 220 F.Supp. 611, 614 (W.D. S.C.1963).

In construing "disability" the Court must be ever mindful that the term relates to the individual claimant. The important consideration is the effect of the impairment on the individual, not the objective standard man of ordinary and customary intelligence and abilities, but with such abilities and inabilities as the individual possesses. Bagwell v. Celebrezze, 232 F.Supp. 989, 993 (W.D.S.C. 1964); Perry v. Celebrezze, 236 F.Supp. 1, 4 (W.D.S.C.1964).

The evidence from the entire record, read as a whole, can lead to only one conclusion: the earning capacity and capability of the plaintiff to engage in substantial gainful activity is negligible, if not non-existent.

The "ivory tower" view of the vocational expert, Cf. Frazier v. Celebrezze, 236 F.Supp. 938 (E.D.S.C.1965), that plaintiff was suitable for certain enumerated jobs listed in a text on "Worker Trait Requirements" was effectively exposed by counsel for plaintiff. The employment opportunities the witness pointed out were what one might characterize as "theoretically available." That is not enough.

It is not necessary that the plaintiff be bedridden to come within the purview of the Act. "Where the statute refers to 'any substantial gainful activity' the work 'any' must be read in light of what is reasonable and not of what is merely conceivable." Thomas v. Celebrezze, supra.

Accordingly, the Court finds that the final decision of the Secretary is not supported by substantial evidence and should be reversed with judgment entered for the plaintiff.

And it is so ordered.