Ann L. THOMPSON

v.

Richard S. SCHWEIKER, Secretary of Health and Human Services.

Civ. A. No. 81-2384.

United States District Court, E. D. Pennsylvania.

June 22, 1982.

**682**

Allan Horwitz, Robert C. Fuerman, Philadelphia, Pa., for plaintiff.

Serena H. Dobson, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM

LUONGO, Chief Judge.

This is an action under 42 U.S.C. § 405(g) to review the final decision of the Secretary of Health and Human Services (Secretary) denying plaintiff's claim for disability benefits. The magistrate, to whom the matter was referred for report and recommendation, reports that (1) there is not substantial evidence to support the Secretary's findings and (2) the Secretary was not entitled to rely on the medical-vocational guidelines contained in 20 C.F.R. Subpart P, Appendix 2 in determining that there were jobs existing in the national economy which plaintiff could perform. Accordingly the magistrate recommends that the Secretary's motion for summary judgment be denied and plaintiff's cross-motion for summary judgment be granted. The Secretary has now filed objections to the magistrate's report and recommendation. For reasons discussed herein, I will reject the magistrate's recommendation, deny the cross-motions for summary judgment, vacate the decision of the Secretary and remand for further proceedings not inconsistent with this memorandum.

After the magistrate issued his report and recommendation, the Court of Appeals for the Third Circuit upheld the validity of the medical-vocational regulations. *Santise v. Schweiker*, 676 F.2d 925 (3d Cir., 1982). Therefore the question before me is whether there is substantial evidence to support the Secretary's finding that plaintiff is not disabled within the meaning of the Social Security Act. *See* 42 U.S.C. § 405(g). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The record in this case may be summarized as follows. Plaintiff is a 44-year old black female who injured her back while working in mid-May 1979. After conservative treatment measures failed to alleviate her pain, plaintiff chose to undergo surgery. On March 27, 1980, she was operated on by Dr. Thomas Gennarelli, a specialist in neurosurgery, who performed a lumbar laminectomy to decompress the nerve roots at the L4 and L5 levels of plaintiff's spine. The medical evidence of record which addresses plaintiff's post-surgery condition is relatively brief. A medical report dated October 31, 1980 from Dr. David Willner, the physician who had referred plaintiff to Dr. Gennarelli, recites in its entirety: "Under my care for residuals of disc surgery 3/80 in Phila. (Dr. Gennarelli). Attempted to work in past month but developed increased pain." (Tr. 129). On November 3, 1980, Dr. Gennarelli rendered his final report which states:

> The patient still has right upper anterior thigh pain and low back pain. She continues on Flexeril and Darvoset and is still unable to fully resume all of her activities. She is mostly back to all of her activities such as driving and shopping but still has pain. The patient is taking Motrin in addition to her Flereril (*sic*) and Darvoset. She is appraised that her old right leg and foot pain has disappeared and that this new pain is at a level higher than expected for the disc level involved. If no resolution of her problem occurs by her next office visit, consideration for myelography will be made to ascertain the status of the nerve roots in the higher lumbar area.

(Tr. 130). Finally, the record contains a "neurological report" dated December 17, 1980 from Dr. John W. Boor, to whom plaintiff had been referred for examination by the Social Security Administration. Based upon his examination of plaintiff, Dr. Boor's impression of plaintiff was as follows:

> Low back pain, status post lumbar laminectomy. Lumbar strain.
>
> At present her neurological examination is remarkably benign and I can find no evidence of focal weakness. Limitations for this patient at present would include any type of employment that would include heavy lifting. However, she certainly is employable working perhaps at a desk job, or perhaps something involving occasional lifting of light packages under five pounds. I can find no focal neurological causes on examination that might explain why she should be placed on disability.
>
> I cannot recommend disability for this patient but can only recommend that she be limited in heavy lifting and that no heavy lifting should be done by her. Otherwise, her examination for a chronic lumbar and possible root syndrome, looks remarkably benign.

(Tr. 133).

In addition to the material medical evidence set forth above, the record also contains the oral testimony of plaintiff and her husband given on November 5, 1980 at the administrative hearing held to determine plaintiff's claim. According to her testimony, plaintiff's daily routine usually begins at 6:30 a. m. when she rises to fix her son's breakfast and lunch. She then drives her son four miles to the school bus, after which she returns home to rest until 10:00 a. m. After her rest, plaintiff walks her dog for 15–20 minutes, fixes herself something to eat, and spends the remainder of the morning picking up around the house and either watching television or sewing. In the afternoon, plaintiff typically spends an hour and a half writing letters and performing other light tasks in her capacity as church secretary before preparing dinner. After dinner, she watches television while resting on a heating pad until 10:00 or 11:00 p. m. at which time she goes to bed. (Tr. 40–44). Apart from her testimony concerning her daily activities, plaintiff also testified that she is able to walk only half a block without resting, and then only with a back brace. (Tr. 38–40). The testimony of plaintiff's husband generally corroborated that of plaintiff. (Tr. 49–52).

Based upon the aforementioned evidence, the Administrative Law Judge (ALJ) made the following relevant findings:

3. The medical evidence of record establishes that the claimant has a history of a laminectomy with excision of a bulging disc.

4. The evidence of record does not establish the claimant's medical condition meets or equals the level of severity described in the Listing of Impairments in the Appendix to Regulations No. 4, Subpart P, of the Social Security Act.

5. The claimant also alleges experiencing severe low back pain, however, the medical evidence of record and her appearance at the hearing do not substantiate these allegations and reflect doubt as to the claimant's credibility in regard to her subjective complaints.

6. Considering the claimant's impairments, singly and in combination, she retains the residual functional capacity to perform at least sedentary work activity as defined by Section 404.1567 of Regulations No. 4.

(Tr. 12).

■ Assuming, for the moment, that the ALJ was correct in relying on the evidence of record, I cannot conclude that there is not substantial evidence to support his findings. As stated above, Dr. Gennarelli stated that the pain in plaintiff's lower right extremity had disappeared. While he did note that plaintiff still complained of pain in her upper right thigh and lower back, he also stated that plaintiff was "mostly back to all of her activities such as driving and shopping." (Tr. 130). Similarly, Dr. Boor's neurological examination of plaintiff was "remarkably benign." If these two reports are considered in conjunction with plaintiff's testimony of her daily activity, I cannot determine that the ALJ was unreasonable in finding that plaintiff's pain was not so severe as to preclude her from engaging in normal work activities. Furthermore, while plaintiff makes much of the ALJ's assessment of her demeanor at the hearing and the inferences to be drawn therefrom, a fair reading of the ALJ's deci-

sion reveals that the ALJ considered plaintiff's appearance in light of her own testimony and the medical reports of Drs. Boor and Gennarelli. This he was permitted to do. *See Lewis v. Califano*, 616 F.2d 73, 76–77 (3d Cir. 1980).

■ A remand is nevertheless necessary in this case because the report of Dr. Boor, upon which the ALJ relied heavily, contains some discrepancies which cast doubt upon its accuracy and perhaps, authenticity. The report of Dr. Boor describes the patient examined by him as "a forty-one year old white female with a history of low back pain that began in May of 1975 while lifting." (Tr. 132). In fact, plaintiff is black, was 42 years of age at the time Dr. Boor examined her, and injured her back in May of 1979. While the remainder of Dr. Boor's report accurately describes a woman with plaintiff's medical history, I cannot assume that the discrepancies in the report are due to clerical error. Since plaintiff's medical records were made available to Dr. Boor prior to her examination, it is entirely possible that Dr. Boor confused those records with another patient. Plaintiff timely pointed out the inaccuracies in the Boor report to the ALJ, but the ALJ's decision contains no explanation for the misdescription (if that's what it was) of plaintiff. In the absence of an adequate explanation, I cannot resolve this matter in favor of the Secretary. The court of appeals for this circuit has stated that "a claimant is entitled to a hearing that resolves all doubts about the claimant's right to disability benefits." *Taybron v. Harris*, 667 F.2d 412, 415 (3d Cir. 1981) (per curiam). Because substantial doubt remains, I will remand this matter to the Secretary for further proceedings not inconsistent with this memorandum.

■ On remand, it may be advisable for the Secretary to consider any additional medical evidence concerning plaintiff's condition that has become available since the ALJ rendered his decision. The November 3, 1980 report of Dr. Gennarelli indicates that plaintiff might be referred for myelography to ascertain the status of the nerve

roots in the higher lumbar area. Certainly if that or similar medical evidence is now available, it would be helpful in evaluating plaintiff's claim. *Cf. id.* (in disability claims based on pain, "every effort should be made to secure any medical evidence that would help resolve doubts about the outcome of the claim").