Marie DeMARCO

v.

Margaret HECKLER, Secretary of the Department of Health and Human Services.

Civ. A. No. 83–1892.

United States District Court, E.D. Pennsylvania.

Aug. 26, 1985.

I. Michael Luber, Philadelphia, Pa., for plaintiff.

Margaret L. Hutchinson, Asst. U.S. Atty., Philadelphia, Pa., for defendant.

---

**1.** Magistrate Powers recognized that plaintiff can be considered only for SSI benefits. Plaintiff last met the earnings requirement for disability insurance benefits on March 31, 1974.

## OPINION

LUONGO, Chief Judge.

Plaintiff in this Social Security action, Marie DeMarco, seeks judicial review of the decision of the Secretary of Health and Human Services denying her application for disability insurance and Supplemental Security Income benefits. The Secretary has filed a motion for summary judgment. Notwithstanding plaintiff's failure to oppose the motion, Magistrate Richard A. Powers, III, has recommended that the motion be denied and the matter remanded for a new administrative hearing.[1] Although the Secretary has filed no objections, I find the Magistrate's Report—Recommendation (attached hereto as Appendix A) unacceptable in several respects and, therefore, do not accept the Report—Recommendation as the opinion of this court. I will remand the case for a new administrative hearing, but on grounds much narrower than those set forth in the Magistrate's Report.

Plaintiff is a 59 year old woman with a high school education. She worked as an ice cream packer for approximately 15 years and has not worked since 1969. She claims to have been disabled since June of 1980 because of Meniere's disease, heart problems, a seizure disorder stemming from a stroke, tuberculosis and a nervous breakdown.

On March 20, 1984 a hearing was held before an Administrative Law Judge. The ALJ, in a decision dated July 5, 1984, applied the Secretary's five-step disability evaluation procedure as set forth in 20 C.F.R. §§ 404.1520 and 416.920. He found that plaintiff did not suffer from a "severe impairment," and was therefore not disabled under § 404.1520(c) and § 416.920(c). The ALJ's ruling became the final decision of the Secretary when it was adopted by the Appeals Council on September 13, 1984.

Since her claimed disability began after that date, she does not qualify for disability benefits. Magistrate's Report—Recommendation at 2 (July 11, 1985).

The court's function on review is to determine whether the Secretary's decision is supported by substantial evidence, that is, by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). The Magistrate found such evidence lacking for several reasons. First, he asserted that the ALJ failed to evaluate the totality of plaintiff's complaints. Second, he found that the ALJ improperly rejected plaintiff's complaints of pain on the basis of the "sit and squirm" test. Third, he stated that the ALJ should have applied the regulations requiring consideration of plaintiff's advanced age and minimal work experience. *See* 20 C.F.R. §§ 404.1563–.1565, 416.-963–.965.

■ With respect to the Magistrate's first point, I conclude that the ALJ properly considered the totality of plaintiff's impairments. Evaluating the medical evidence and plaintiff's testimony, the ALJ found that plaintiff had recovered from some of her ailments and that the others were controllable by medication. Past medical problems and those which are under control are not severe or disabling under the Social Security Act. *Bianchi v. Secretary of Health and Human Services*, 764 F.2d 44 (1st Cir.1985); *Jackson v. Heckler*, 580 F.Supp. 1077, 1079 (E.D.Pa. 1984). If the ALJ is correct in his evaluation of plaintiff's ailments I cannot say that he erred in finding those ailments, individually or in combination, not to be severe. *See Bianchi*, 764 F.2d at 45; *Jackson*, 580 F.Supp. at 1078–80.[2]

2. Plaintiff's present condition is difficult to determine from the record, since plaintiff has submitted no medical evidence dated later than 1982. At the hearing on March 20, 1984, plaintiff's counsel requested and received an extension of time to submit current medical evidence. The record remained open at least until May of 1984, when counsel informed the ALJ that he had been unable to secure any further evidence. Plaintiff had ample opportunity to supplement

■ The question then is whether the ALJ correctly evaluated plaintiff's various impairments. I believe that he did. The ALJ carefully considered the medical evidence as to each of plaintiff's alleged disabilities. Only after determining that the evidence did not support plaintiff's subjective complaints did he consider other factors, including his own impressions as to plaintiff's credibility. The ALJ's conclusion that plaintiff's ailments do not significantly limit her ability to perform basic work activities is supported by substantial evidence.

Both the medical reports and plaintiff's own testimony show that her tuberculosis was successfully treated. Plaintiff claims to have continuing symptoms of Meniere's disease, including ringing in the ears, dizziness and loss of balance, but specifically stated at the hearing that she is "okay" if she takes her medication. There is no evidence that plaintiff continues to be troubled by nervous depression.

The ALJ also found that plaintiff's seizure disorder does not constitute a severe impairment. He considered the 1982 report of Dr. Julio Kuperman, plaintiff's attending neurologist, that even with medication plaintiff had episodes of dysphasia which could represent seizures. The ALJ also considered plaintiff's testimony that she had a seizure in 1983. He noted, however, that plaintiff had submitted no documentary evidence of seizure activity since June of 1980, when she was placed on Dilantin to control her seizure disorder.

The Magistrate asserts that the ALJ, in finding plaintiff's seizure disorder to be controlled, improperly relied upon his own lay observations rather than upon the evidence. I disagree. The weighing of evidence is the province of the ALJ, *Arnold v.*

the record and has not now suggested that any new evidence of disability exists. I therefore would not remand merely to permit plaintiff to update her medical evidence. Remand, however, is necessary on other grounds. It may therefore be advisable for the ALJ on remand to consider current medical evidence if plaintiff is now able to produce such evidence. *See Thompson v. Schweiker*, 541 F.Supp. 681, 684–85 (E.D.Pa.1982).

*Heckler,* 732 F.2d 881, 883–84 (11th Cir. 1984); *Jackson v. Heckler,* 580 F.Supp. 1077 (E.D.Pa.1984), and his conclusion is supported by the record. The only evidence of plaintiff's 1983 seizure is her own testimony. Indeed, she herself testified that the seizure occurred because her Dilantin level was low, and she now takes 300 milligrams of Dilantin per day to control her seizure disorder. In declaring that plaintiff "had a seizure in 1983 while taking seizure medication," Magistrate's Report—Recommendation at 4, the Magistrate in effect engaged in factfinding and went beyond this court's limited scope of review.

■ Plaintiff also claims to have heart trouble, which causes heaviness and pain in her chest. As the ALJ noted, plaintiff has undergone a series of cardiac tests which have failed to demonstrate the presence of any heart disease. Plaintiff's attending cardiologist, Dr. Pat Procacci, reported in 1981 that plaintiff's chest discomfort responds to medication. Plaintiff testified that she takes Nitroglycerin about once a week, whenever she feels "a slight pain." The ALJ concluded that the evidence would not support a finding that plaintiff had a severe heart impairment.

After setting forth his conclusions with respect to the medical evidence, the ALJ stated:

> As to the subjective validity of the complaints, Administrative Law Judges see a lot of genuinely sick people (we grant over 50 percent of all cases) and expect in cases of genuine pain to see some of the stigmata of old, intractable pain such as premature aging, hopeless mien, lines of suffering, and a certain consistency in bodily movements or lack of them. Claimant did not impress as a person who has been disabled for four years by chest pain or other subjective symptoms. Rather, she appeared to be a healthy woman who looked well for her age and took pride in her appearance. Despite recent exaggeration, claimant has admitted to doing light housework and having an active social life. Neither her appearance, her activities, nor the documentary evidence, are consistent with a finding that she is unable to work.

Record at 13.

The Magistrate seized upon these statements to justify his rejection of the ALJ's decision, declaring that the ALJ had applied "the infamous 'sit and squirm' test" and had based his conclusions on "his own incorrect lay observations." Magistrate's Report—Recommendation at 4, 6–7. Once again, I must disagree. The Social Security Disability Benefits Reform Act of 1984, Pub.L. 98–460, 98 Stat. 1794 (1984), provides that an individual's subjective complaints of pain are not alone sufficient to establish disability. The Third Circuit Court of Appeals has held that while the statute does not require objective evidence of pain, it does require "objective medical evidence of some condition that could reasonably produce pain." *Green v. Schweiker,* 749 F.2d 1066, 1071 (3d Cir.1984). *See also Ferguson v. Schweiker,* 765 F.2d 31, 37 (3d Cir.1985).

In this case, the ALJ thoroughly considered the objective medical evidence. He found that plaintiff had no medically verified impairment reasonably capable of producing the subjective symptoms of which she complained. Only then did the ALJ consider whether plaintiff's claims of pain were consistent with her physical demeanor. He used his observations to reinforce, not to supplant, a conclusion drawn from the medical evidence. This was not error. *Thompson v. Schweiker,* 541 F.Supp. 681, 684 (E.D.Pa.1982). Indeed, credibility determinations are an important part of an ALJ's function. *See, e.g., Arnold v. Heckler,* 732 F.2d 881, 883–84 (11th Cir.1984); *Van Horn v. Schweiker,* 717 F.2d 871, 873–74 (3d Cir.1983) (ALJ may evaluate the credibility of witnesses, though he may not ignore medical evidence contradicting his own observations); *Whitney v. Schweiker,* 695 F.2d 784, 788 (7th Cir.1982).

■ Although I conclude that the ALJ's assessment of plaintiff's physical ailments is supported by substantial evidence, I am nevertheless constrained by recent deci-

sions of our court of appeals to hold that a remand is required. Plaintiff claims to suffer from dizziness and drowsiness as a result of her medications. She states that she must take two-hour naps twice a day, and feels unable to work as a result. The ALJ did not consider these claims. Although plaintiff produced no medical evidence concerning side effects, her level of medication is such that it could reasonably produce the claimed symptoms. I must therefore remand for the ALJ to determine whether plaintiff is disabled because of the side effects of her medications. *Green v. Schweiker*, 749 F.2d 1066 (3d Cir.1984); *Stewart v. Secretary of Health, Education and Welfare*, 714 F.2d 287, 290 (3d Cir. 1983).

 Finally, the Magistrate found that the ALJ erred in failing to consider plaintiff's age, education and work experience. The ALJ evaluated plaintiff in accord with the Secretary's regulations, which provide that those three factors will not be considered in determining whether a claimant has a severe impairment. 20 C.F.R. §§ 404.1520(c), 416.920(c). The Secretary has the power to issue rules implementing the provisions of the Social Security Act. 42 U.S.C. § 405(a). Such rules can be set aside only if the Secretary acted arbitrarily or capriciously, or abused her discretion. *E.g.*, *Santise v. Schweiker*, 676 F.2d 925, 933–34 (3d Cir.1982), *cert. dismissed, Simmons v. Heckler, Secretary of Health and Human Services*, 461 U.S. 911, 103 S.Ct. 1889, 77 L.Ed.2d 280 (1983). The Secretary has determined that certain impairments will not significantly limit the performance of basic work related functions regardless of an individual claimant's age, education and work experience. Plaintiff has not challenged the applicable regulation, and I cannot say that the Secretary's determination is arbitrary, capricious or an abuse of discretion. *See Jackson v. Heckler*, 580 F.Supp. 1077, 1081 (E.D.Pa.1984).

I note, however, that the Third Circuit has recently held that an ALJ's finding of no severe impairment did not in itself justify denial of benefits where the plaintiff had established a *prima facie* case of inability to return to past employment. *Ferguson v. Schweiker*, 765 F.2d 31 (3d Cir.1985). The court did not explicitly disapprove the Secretary's regulations. It is not clear from the opinion whether the court will require the Secretary to consider a broader range of factors in all cases, or whether the court merely concluded that the claimant before it was unable to perform basic work activities and was thus severely impaired according to the Secretary's own definition. I need not decide this issue, as the case must be remanded in any event. Because the law is unclear, however, the ALJ should on remand make explicit findings as to whether plaintiff's combination of impairments would prevent her from performing former work.

## ORDER

This 26th day of August, 1985, it is ORDERED that:

1. Defendant's Motion for Summary Judgment is DENIED;

2. This matter is REMANDED to the Secretary for further proceedings consistent with the foregoing opinion.

## APPENDIX A

### REPORT—RECOMMENDATION

July 11, 1985

RICHARD A. POWERS, III, United States Magistrate.

This is an action brought by the plaintiff, Marie DeMarco, pursuant to § 205(g) of the Social Security Act (hereinafter the "Act"), 42 U.S.C. § 405(g), for a review of a final determination of the United States Secretary of Health and Human Services (hereinafter the "Secretary") denying the plaintiff's application for disability benefits and Supplemental Security Income (SSI) benefits. Presently before the Court is the defendant's motion for summary judgment. The plaintiff has chosen not to file an answer to the defendant's motion for summary judgment. For the reasons that follow, I recommend that this matter be remanded

for a new administrative hearing and the defendant's motion for summary judgment be denied.

The plaintiff applied for disability benefits and SSI benefits on May 13, 1981. The plaintiff claimed disability, beginning in June, 1980, due to "Meniere's [d]isease, [s]troke, [h]eart problems, TB, nervous breakdown." (tr. 79). The plaintiff last met the earning requirements for disability insurance income on March 31, 1974. Since she claimed disability beginning in June, 1980, she does not qualify for disability benefits. However, she still can be considered for SSI benefits. Her application was denied initially (tr. 89) and upon reconsideration on January 29, 1982. (tr. 96). Following the plaintiff's request, a hearing was held before Administrative Law Judge (hereinafter the "ALJ") John A. McMenamin. On October 8, 1982, the ALJ found that the plaintiff had no severe impairments and thus, was not disabled. However, the tape of this hearing was lost. The ALJ's decision was upheld by the Appeals Council. (tr. 6).

Subsequently, the plaintiff commenced a civil action in this Court. Pursuant to a stipulation between the parties' counsel, the Honorable Alfred L. Luongo vacated the Secretary's decision on July 26, 1983 and remanded the case for further administrative action due to the inability of the Social Security Administration to produce a transcript of the previous hearing. (tr. 6). A de novo hearing was held before ALJ McMenamin on March 24, 1984. On July 5, 1984, the ALJ issued his decision denying the plaintiff's application. (tr. 6-14). The Appeals Council affirmed the ALJ's decision on September 13, 1984. (tr. 4). The Appeals Council's decision is the final determination of the Secretary and is reviewable by this Court.

The question before this Court is whether the decision of the Secretary is supported by substantial evidence. Substantial evidence is judicially defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S.

389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Kent v. Schweiker,* 710 F.2d 110, 114 (3 Cir.1983). Elaborating upon this definition, the Third Circuit articulated:

> This oft-cited language is not, however, a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of *substantial evidence is not merely a quantitative exercise.* A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion.... *The search for substantial evidence is thus a qualitative exercise* without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

*Kent,* 710 F.2d at 114. (emphasis added).

As will appear, the Secretary's decision is not supported by substantial evidence for a number of reasons. First, the ALJ failed to evaluate the totality of the plaintiff's complaints as required by the Social Security Disability Benefits Reform Act of 1984, Pub.L. No. 98–460, 98 Stat. 1794 (1984) (hereinafter "Reform Act"). This Act simply codified the existing case law embodied in *Bass v. Celebrezze,* 238 F.Supp. 355 (E.D.S.C.1965) and *Miller v. Heckler,* 756 F.2d 679 (8 Cir.1985). Specifically, §§ 4(a)(1) and 223(d)(2) of the Reform Act

> In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under this section, the Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity. If the Secretary does find a medically severe combination of impairments, the combined impact of the impairments shall be

considered throughout the disability determination process.

Secondly, in evaluating the plaintiff's pain, the ALJ erred when he applied the infamous "sit and squirm" test by relying on his own incorrect lay observations of the plaintiff's physical condition to determine that the plaintiff did not experience "genuine pain." (tr. 13). This is evidenced by the ALJ's statements that "[plaintiff's] seizure disorder is controllable by medication" (tr. 12) although the plaintiff had a seizure in 1983 while taking seizure medication. (tr. 61–62). Third, the ALJ did not evaluate the plaintiff with regard to regulations concerning a person of her advanced age and the fact that she has little or no experience to perform any type of work activity. 20 C.F.R. § 404.1563(d) and § 416.963(d).

The plaintiff is presently fifty-nine (59) years old (tr. 79) and has a twelfth grade education. (tr. 51). She worked for approximately fifteen (15) years as an ice cream packer and has not worked since 1968. (tr. 102). She alleges disability commencing June, 1980 due to various ailments. (tr. 79).

The plaintiff was a patient at St. Agnes Medical Center from June 11 to June 18, 1980. She was admitted following a seizure. The final diagnosis was "[c]erebral infarction, new onset, unifocal seizure activity." (tr. 128). Prior to this the plaintiff had a history of tuberculosis and Meniere's disease. The Meniere's disease was apparently treated satisfactorily by 1977 with Antivert, although recently the plaintiff has alleged continuing symptoms. (tr. 12). Plaintiff also has a history of depression. In 1977 she was subject to frequent crying and severe loss of energy. She received outpatient treatment at a Community Mental Health Center for approximately one and a half (1½) years. (tr. 173). Plaintiff also underwent a stress electrocardiogram and an echocardiogram in December, 1980 because of chest pain. (tr. 139).

Plaintiff has been treated by Dr. Patrick Procacci, a cardiologist and Dr. Julio Kuperman, a neurologist. Dr. Procacci treats the plaintiff for "nocturnal angina [with] orthopnea" which responds to Nitroglycerine. (tr. 166). Inderal and Isordil were also prescribed. (tr. 167). Dr. Kuperman submitted a report dated January 6, 1982 in which he stated that the plaintiff had a "[l]eft [f]rontal [i]nfarction" on June 25, 1980. (tr. 171). Dr. Kuperman added that although the plaintiff "[r]ecovered well from initial aphasia," she continues to have a "seizure disorder." (tr. 171). He further elaborated on this impairment in his report by explaining that the plaintiff was having "[e]pisodes of transient exacerbation of dysphasia, which may represent seizures." (tr. 171). Although plaintiff takes Dilantin to control these episodes, as recently as 1983 she was hospitalized for another seizure. The ALJ simply found that the plaintiff had "controlled seizure disorder" which flies in the face of Dr. Kuperman's report that the plaintiff continued to have seizures in spite of the medication.

The plaintiff takes several medications for her disorders: Procardia, 10 mgs. three (3) times a day, Antivert, 250 mgs. each day, Dilantin, 100 mgs. three (3) times per day, Inderal, 40 mgs. twice a day (tr. 180) and Nitroglycerine once a week under her tongue. (tr. 65). These medications cause her to become dizzy and drowsy and she is required to take naps of two (2) hours twice a day. (tr. 66). She spends most of the day sleeping and watching television and does not perform most household chores. (tr. 68). Moreover, she does not feel she could function on a job because with this combination of medications she cannot predict when she is going to pass out. (tr. 69). Despite this uncontroverted evidence, the ALJ failed to consider the plaintiff's inability to work in light of the drowsiness caused by taking the combined medications.

Similarly, in evaluating the plaintiff's pain, the ALJ inappropriately applied the "sit and squirm" test when he contended that the plaintiff did not appear in "genuine pain" and added:

As to the subjective validity of the complaints, Administrative Law Judges see a lot of genuinely sick people (we grant over 50 percent of all cases) and expect in cases of genuine pain to see some of

the stigmata of old, intractable pain such as premature aging, hopeless mien, lines of suffering, and a certain consistency in bodily movements or lack of them. Claimant did not impress as a person who has been disabled for four years by chest pain or other subjective symptoms. Rather, she appeared to be a healthy woman who looked well for her age and took pride in her appearance. (tr. 13).

The plaintiff suffers from both nonexertional and exertional impairments which should have been evaluated by the ALJ with attention given to the plaintiff's age, work experience and inability to do substantial gainful activity. In evaluating pain, all that need exist is a medical impairment resulting from anatomical, physiological or psychological abnormalities which could reasonably be expected to produce pain. This, plus evidence based on statements by the claimant or his/her physician regarding the intensity and persistence of such pain, or other symptoms which may reasonably be accepted as consistent with medical findings, will lead to a conclusion that the claimant is under a disability. The claimant's statements alone are not conclusive evidence as to disability but shall be considered along with objective medical evidence. Reform Act §§ 4(a)(1) and 223(d)(5). Objective medical evidence of pain or other symptoms established by medically acceptable laboratory techniques must be considered in reaching a conclusion of disability. It is impermissible for the ALJ, in his untutored lay opinion, to conclude that the plaintiff is not in pain simply because the plaintiff does not appear to be in pain or exhibit symptoms indicative of pain. *Roberts v. Califano*, 439 F.Supp. 188 (E.D.Pa. 1977). The test is whether or not the plaintiff has an objective condition which could reasonably produce pain and whether or not the effects are so subjectively real to the plaintiff to create disability. *Freeman v. Schweiker*, 681 F.2d 727, 731 (11 Cir. 1982).

Also at issue in relation to disability claims is the plaintiff's age, work experience and capability of performing substantial gainful activity. The plaintiff is of advanced age, which is fifty-five (55) or older, and she must be evaluated with regard to the Regulations concerning a person of her advanced age and the fact that she has had little or no experience to perform any type of work activity. 20 C.F.R. §§ 404.1563(d) and 416.963(d). The ALJ's finding that the plaintiff is not severely impaired is not supported by substantial evidence. Moreover, there is no evidence that the plaintiff could perform in any work environment due to her age and lack of experience. The ALJ's attention to sporadic activities performed by the plaintiff, such as walking to church, visiting friends and relatives, and doing some light housekeeping (tr. 13) cannot be used to prove ability to do substantial gainful activity. *Smith v. Califano*, 637 F.2d 968 (3 Cir. 1981); *Neumerski v. Califano*, 513 F.Supp. 1011 (E.D.Pa.1981).

Accordingly, I make the following

### RECOMMENDATION

Now, this 11th day of July, 1985, IT IS RESPECTFULLY RECOMMENDED that this matter be REMANDED for a new hearing where the totality of her exertional and nonexertional impairments shall be properly evaluated.